Rufus E. CUNNINGHAM, Plaintiff,

v.

COUNTY OF LOS ANGELES, et al.,
Defendant–Appellee,

and

Richard Eiden,
Real-party-in-interest-Appellant.

No. 87–6596.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 1, 1988.

Decided Oct. 11, 1988.

As Amended March 3, 1989.

Robert Mann, Santa Monica, Cal., and Richard Eiden, Los Angeles, Cal., for plaintiff.

DeWitt Clinton, S. Robert Ambrose, Dennis Gonzales, and Kevin Brazile, Los Angeles, Cal., for defendant-appellee.

Before WALLACE, FARRIS and WIGGINS, Circuit Judges.

FARRIS, Circuit Judge.

Rufus Cunningham, a peace officer for the California Department of Insurance, brought an action on a claim of false arrest and wrongful search against employees of the Los Angeles County Sheriff's Department and the County. He prevailed in his action, although not on all grounds asserted in the complaint or against all defendants. He appeals: 1) the amount of the award for attorney's fees under 42 U.S.C.

§ 1988; 2) the imposition of Fed.R.Civ.P. 11 sanctions against his counsel; and 3) the failure to award him his costs as prevailing party.

## FACTUAL AND PROCEDURAL OVERVIEW

Cunningham filed suit against the County of Los Angeles; Sheriff Sherman Block; Sheriff Deputies Robert Birdsall, Richard Papp, and Richard Payne; and Sergeants David Brusby and Edgar Price. He alleged that his arrest by the Sheriff's Department was unsupported by probable cause and resulted in a "deprivation of liberty, invasion of his privacy, and violation of his civil rights." He also contended that the Sheriff's Department has a "custom, policy and practice of racial discrimination against Blacks." He claimed compensatory damages of $20,000 and punitive damages of $500,000.

On April 22, 1987, Los Angeles County and Sheriff Block moved for summary judgment on the theory that no policy or custom attributable to the County was the legal cause of Cunningham's constitutional deprivation. Cunningham did not oppose the motion, which was granted. On May 26, 1987 just before trial, the court also dismissed all counts against Sergeant Brusby and Deputy Sheriff Payne.

The trial began on May 26, 1987. Prior to closing arguments or jury instructions, the case settled for $5,000. Because the settlement labeled Cunningham the prevailing party, he became entitled to seek attorney's fees under 42 U.S.C. § 1988. The trial court ordered a hearing on Cunningham's motion for attorney's fees and issued an order to show cause why the naming of certain defendants in the complaint should not be deemed a violation of Fed.R.Civ.P. 11.

At the hearing, the district court awarded attorney's fees of $7,500 to Cunningham and assessed monetary sanctions against him in the sum of $5,000. Counsel for the County and Sheriff Block later submitted a declaration detailing fees and costs at $4,719, and the court reduced the Rule 11 sanctions to this amount.

Cunningham appealed in a timely fashion. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## I. THE ATTORNEY'S FEE AWARD

Section 1988 provides that in federal civil rights actions or proceedings, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. We review the district court's assessment of attorney's fees for abuse of discretion. *Jordan v. Multnomah County*, 815 F.2d 1258, 1261 (9th Cir. 1987); *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 480 (9th Cir.1985). "The district court's discretion to award attorney's fees under § 1988 has, however, been narrowly construed and is circumscribed by decisions of the Supreme Court and this circuit." *Jordan*, 815 F.2d at 1261 (citations omitted). In order to facilitate our review of its exercise of discretion, the district court should "provide a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

The legislative history of § 1988 does not explain what constitutes a "reasonable" attorney's fee, but it does endorse the multifactor guidelines developed by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). *See also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). The Supreme Court has interpreted this endorsement of a flexible standard by adopting a two-part test to channel the district court's exercise of discretion. Under this "hybrid approach" to the calculation of a reasonable attorney's fee for the prevailing party, courts must first calculate a lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. Next, the court may increase or reduce the presumptively reasonable lodestar fee, *see Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir.

1988) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)), with reference to the *Johnson/Kerr* factors that have not been subsumed in the lodestar calculation, *see Wood v. Sunn*, 852 F.2d 1205, 1212–13 (9th Cir.1988) (identifying several factors that have been subsumed); *Clark v. City of Los Angeles*, 803 F.2d 987, 990 & n. 3 (9th Cir.1986).

### A. The Lodestar Figure

The only dispute on appeal with respect to the lodestar calculation concerns the number of hours reasonably expended on the case. The district court, after considering Cunningham's requests of $26,120 for work on the merits and $3,037.50 for work on motions relating to attorney's fees and sanctions, fixed the lodestar figure at $12,000. This amount was based on the hourly rate of $135 claimed for Cunningham's attorney, Richard Eiden, and the hourly rates claimed for Eiden's clerks. The court accepted both of these rates as reasonable. In determining the number of hours to be figured into the lodestar, however, the court reduced the figure claimed by Cunningham because it deemed this number of hours excessive. We review this decision for abuse of discretion.

The starting point of our review of the record must be a "recogni[tion] that deference is to be given to a district court's determination of a reasonable attorney's fee." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1213 (9th Cir.1986), *amended*, 808 F.2d 1373 (9th Cir.1987). On the one hand, we need "some indication or explanation of how the district court arrived at the amount of fees awarded" because without an adequate explanation, "it is simply not possible for this court to review such an award in a meaningful manner." *Id.* On the other hand, we do not require an elaborately reasoned, calculated, or

worded order; a brief explanation of how the court arrived at its figures will do. *See, e.g., Quesada*, at 539 (although "we would have preferred a more detailed explanation ..., the district court['s brief comments were] enough to review its decision").

Substantively, both the Supreme Court and our cases have emphasized the discretionary nature of the court's determination of the number of hours *reasonably* expended. One factor that may be used to reduce this number is inadequate documentation. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. Assuming that the party seeking attorney's fees submits evidence supporting a particular number of hours worked, the court may credit that party with fewer hours if the time claimed is "excessive, redundant, or otherwise unnecessary." *Id.* at 434, 103 S.Ct. at 1940. Among the factors that may justify a gap between the hours actually spent and the number of hours deemed reasonable are: (1) the overstaffing of a case or a demonstration of exceptional skill and efficiency; and (2) the relative novelty and complexity of the issues raised. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940; *Chalmers*, 796 F.2d at 1212.

We focus first on the requirement that the district court give at least a brief explanation of its reasoning and calculations. In the portion of its order devoted to determining the lodestar amount, the court justified its view that the time spent on the case was unreasonable with reference to Cunningham's level of success. The court did not express any doubts that the time claimed by Eiden was actually spent.[1] Instead, it analyzed the claims brought against the various defendants and concluded, based in part on the fact that only three of the seven defendants named in the complaint remained at trial,

---

1. The court does assert, in its discussion of the *Johnson/Kerr* factors under the second step of the "hybrid" analysis, that Cunningham failed adequately to document the work of three law clerks. The court nowhere states, however, what portion of the 290 hours claimed for the clerks' work *was* documented. The court merely uses its assertion of inadequate documentation to support a further reduction of the fee

award below the lodestar. Because this analysis was insufficiently explained, we decline to transpose it to the lodestar analysis. And because the Supreme Court has held that this factor may only be considered as part of the lodestar calculation, it was improper for the court to rely on this rationale to adjust the lodestar. *See* discussion, *infra*.

that Cunningham's level of success was not high. The order then reduced the number of hours to reflect the lack of success. In addition, the court stated that the twenty-two hours that Eiden devoted to the Rule 11 sanctions threatened against him by the court do "not reflect a civil rights claim successfully pursued," and should therefore be deemed unreasonable for lodestar calculation purposes. On the basis of these two reductions, the court set the lodestar figure, which encompasses "work on the merits and on the post-settlement motions," at $12,000.

Courts need not attempt to portray the discretionary analyses that lead to their numerical conclusions as elaborate mathematical equations, but they must provide sufficient insight into their exercises of discretion to enable us to discharge our reviewing function. As in *Quesada*, the order before us is hardly a model of clarity, and we would have preferred a more straightforward calculation of the number of hours reasonably spent. Nonetheless, the court's citations and numerical conclusions are helpful, and the explanation of its reasoning gives us a good indication of how the court's discretionary authority was exercised in this case. We conclude that the attorney's fee order satisfies the "concise but clear" explanation requirement of *Hensley* and its progeny.

A weightier question concerns whether the district court abused its discretion in reducing the lodestar amount for the reasons cited in the court's order. Cunningham contends that there was an abuse of discretion because the reduction in number of hours was based on impermissible factors that were unrelated to whether the time spent on the case was "reasonable." In particular, Cunningham takes exception to the comparison in the court's order of the number of defendants who remained at trial with the number of defendants named in the complaint. In Cunningham's view, this comparison bears no relation either to the success of his lawsuit or to the time and effort that was reasonably spent in preparation of his case. Cunningham claims that his attorney is entitled to collect fees for all of the time claimed because, despite the dismissal of several defendants and his failure to succeed on every theory, the litigation was generally a success from the plaintiff's perspective.

We agree with Cunningham's legal premise that courts may not adopt rigid mathematical formulas tying the lodestar figure to the ratio of defendants remaining at trial to defendants served in the complaint. The Supreme Court has disapproved on more than one occasion of such pretensions to mathematical precision. In *Hensley*, the Court expressed its agreement "with the District Court's rejection of 'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon,'" reasoning that "[s]uch a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." 461 U.S. at 435 n. 11, 103 S.Ct. at 1940 n. 11. In *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), the plurality rejected a rule of proportionality that would have limited attorney's fee awards under § 1988 to a proportion of the damages recovered in the underlying suit and endorsed instead a flexible approach to lodestar calculations that takes into account all considerations relevant to the reasonableness of the time spent. *Id.* at 573–80, 106 S.Ct. at 2693–97 (opinion of Brennan, J.); *accord id.* at 585, 106 S.Ct. at 2700 (Powell, J., concurring in the judgment) (rejecting strict rule of proportionality because "[t]he facts and circumstances of litigation are infinitely variable"); *id.* at 595, 106 S.Ct. at 2705 (Rehnquist, J., dissenting) ("I agree with the plurality that the importation of the contingent-fee model to govern fee awards under § 1988 is not warranted by the terms and legislative history of the statute"). We agree that a unifactor approach tying the number of hours accepted as reasonable solely to the proportion of defendants ultimately prevailed against would be inconsistent with the statutory mandate that district courts exercise discretion by considering *all* factors relevant to reasonableness.

■ But insofar as Cunningham argues that this is what the district court did in the case at bar, we do not agree. We recognize that the court considered, among several factors, Cunningham's failure to produce evidence to back up his allegations against four of the seven defendants named in the complaint. But far from an arbitrary slashing of the lodestar amount by the percentage of defendants dismissed, the court analyzed the importance of each defendant to Cunningham's overall case. The court considered not just the number of defendants, but also the claims brought against each one. Each factor was analyzed not for some talismanic significance of its own, but for its ability to shed light on " 'the significance of the overall relief obtained' to all the claims and remedies pursued in the litigation." *Greater Los Angeles Council on Deafness v. Community Television of Southern California,* 813 F.2d 217, 222 (9th Cir.1987) (citing *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940).

This analysis was wholly proper. As we have recognized in the past, the "results obtained" are probative on the issue of the "reasonableness" of a fee award. *See Kerr,* 526 F.2d at 69–70 (eighth factor listed). This factor is among those that "are now subsumed within the initial calculation of the lodestar amount," *Wood v. Sunn,* at 1212 (citing *Blum v. Stetson,* 465 U.S. 886, 898–900, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1984)), and may thus be considered in determining whether the hours spent on the case are reasonable. As we stated in a passage quoted by the district court in its order:

> [T]he mere fact that [plaintiff] was not victorious as to all defendants does not automatically bar an attorney's fees award.... However, the amount of attorney's fees they receive should be based on the work performed on the issues in which they were successful.

*Sethy v. Alameda County Water Dist.,* 602 F.2d 894, 897–98 (9th Cir.1979), *cert. denied,* 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980).

The district court's analysis was faithful to that principle. Congress vested trial courts with the discretion to undertake such analyses because they are by their nature inexact. Reasonable people may differ as to what number of hours was *reasonable* to spend on this case. But once we are satisfied that the district court has considered the appropriate factors for the appropriate reasons, our reviewing function is finished. Because we are so satisfied in this case, we hold that it was not an abuse of discretion to set the lodestar figure at $12,000.

### B. *The Kerr Factors*

Our affirmance of the lodestar calculation does not end our inquiry. Cunningham also objects to the district court's use of the *Kerr* factors to reduce Eiden's fee award from the lodestar figure of $12,000 to $7,500. According to Cunningham, all of the factors relied upon by the district court to lower the award are subsumed in the initial lodestar determination and are therefore impermissible grounds for further reductions.

We generally review the application of the *Kerr* factors to the facts of individual cases for abuse of discretion. This discretion is circumscribed by the pronouncements of the Supreme Court and this Circuit, *Jordan,* 815 F.2d at 1261, and "any elements of legal analysis and statutory interpretation which figure in the district court's decisions are reviewed *de novo.*" *Hall v. Bolger,* 768 F.2d 1148, 1150 (9th Cir.1985).

■ Under the lodestar approach, many of the *Kerr* factors have been held subsumed in the lodestar determination as a matter of law. *Blum,* 465 U.S. at 898–900, 104 S.Ct. at 1548–49. These factors may not act as independent bases for adjustments of the lodestar. *Miller v. Los Angeles County Bd. of Educ.,* 827 F.2d 617, 620 n. 4 (9th Cir.1987); *Jordan,* 815 F.2d at 1262 n. 6. Those *Kerr* factors that are not subsumed may support adjustments in rare cases, provided the district court states which factors it is relying on and explains its reasoning. *See Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439

(1986), *rev'd after rehearing on other grounds,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (upward adjustment based on unsubsumed *Kerr* factors is permissible in "certain 'rare' and 'exceptional' cases," provided the adjustment is "supported by both 'specific evidence' on the record and detailed findings by the lower courts"); *Quesada,* at 539 (recalling, in a case involving a downward reduction, that "[t]he Supreme Court has repeatedly emphasized that the lodestar fee should be presumed reasonable unless some exceptional circumstance justified deviation"). While we will give courts latitude to balance and weigh permissible factors, any reliance on factors that have been held to be subsumed in the lodestar determination will be considered an abuse of the trial court's discretion.

In this case, the district court gave four justifications for the downward adjustment of the lodestar amount: (1) insufficient documentation of dates and activities with regard to the work done by the law clerks; (2) a "mediocre" performance by Eiden; (3) the relatively low settlement figure of $5,000, as compared with Cunningham's request in his complaint for compensatory and punitive damages totaling $520,000; and (4) the court's view that "there was a substantial doubt as to whether the settling defendants intended to deny the plaintiff of [sic] his civil rights."

■ The precedents make clear that the first two of these reasons are not properly considered under the second step of the "hybrid" analysis. The Supreme Court held in *Hensley* that the first rationale, inadequate documentation, is subsumed in the lodestar determination. 461 U.S. at 433, 103 S.Ct. at 1939. Quality of representation, the second justification, has also been held subsumed, at least in the absence of specific evidence that the attorney's performance is exceptional or abysmal. *Delaware Valley Citizens' Council,* 106 S.Ct. at 3098–99; *Blum,* 465 U.S. at 899–900, 104 S.Ct. at 1549; *Jordan,* 815 F.2d at 1262 n. 6. Insofar as the district court relied on these factors to reduce the fee award be-

low the lodestar amount, it abused its discretion.

The third factor, a comparison of the damages sought with the settlement figure, raises the question of whether the relief obtained is subsumed in the lodestar determination. The district court sought to distinguish "the question of whether the time was reasonably spent, arriving at a figure by examining in part the claims asserted and whether they were successful," from an examination of "the final award relative only to the 'amount involved.'" The court allowed that the first part of its dichotomy was accounted for in the lodestar calculation, but nonetheless considered a narrower focus on the final damage award a legitimate *Kerr* factor. As support for this dichotomy, the court cited the Supreme Court's decisions in *Blum* and *Hensley.* As authority for reducing the fee award because the damages recovered were much less than those sought, the court cited our decision in *Greater Los Angeles Council on Deafness,* 813 F.2d 217.

The Supreme Court, in its post-*Hensley* pronouncements on § 1988, has put considerable force behind its requirements that district courts treat the lodestar figure as presumptively reasonable and adjust it only in rare or exceptional cases. Whereas in *Hensley,* the Court hinted at a two-part inquiry that first addressed the lodestar and then modified that number "upward or downward" according to the "results obtained," 461 U.S. at 434, 103 S.Ct. at 1940, more recent cases have held that "the 'results obtained' generally will be subsumed within other factors used to calculate a reasonable fee," and that this factor "normally should not provide an independent basis for increasing the fee award," *Blum,* 465 U.S. at 900, 104 S.Ct. at 1549. *See also Delaware Valley Citizens' Council,* 106 S.Ct. at 3098 (reading *Blum* as modifying the *Hensley* analysis by expanding upon *Hensley's* findings "that many of the *John-son[/Kerr]* factors 'are subsumed within the initial calculation of the lodestar'"). We, too, have acknowledged that the "results obtained" is among the factors that

are ordinarily subsumed in the lodestar. *See, e.g., Jordan*, 815 F.2d at 1262 n. 6.

▌ Thus, in ordinary cases, a plaintiff's "degree of success" or the "results obtained" should be adequately accounted for in the lodestar. Only in rare or exceptional cases will an attorney's *reasonable* expenditure of time on a case not be commensurate with the fees to which he is entitled. Adjustments to the lodestar based on "results obtained" must be supported by evidence in the record demonstrating why such a deviation from the lodestar is appropriate. *See Blum*, 465 U.S. at 900, 104 S.Ct. at 1549. In the case at bar, neither the record before us nor the district court's order shows why the downward adjustment "was necessary to provide fair and reasonable compensation." *Id.* at 901, 104 S.Ct. at 1550. This deviation from the lodestar, therefore, cannot stand.

What the district court did was assess Cunningham and his counsel a double penalty for the modest success of the lawsuit. There is no justification in the case law for bifurcating the "results obtained" test in this fashion. To the contrary, *Blum* held that the district court had abused its discretion by adjusting the lodestar upward for "quality of representation" in the absence of "specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" 465 U.S. at 899, 104 S.Ct. at 1548 (citing *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940). Because the "quality of representation," like the results obtained, "generally is reflected in the reasonable hourly rate," the Court reasoned that the adjustment represented "a clear example of double counting." *Id.* Hence, while allowing for the possibility that deviations from the lodestar may be justified in certain situations, the Court made clear that where a factor is generally considered

as part of the lodestar, further adjustments based on that factor will ordinarily amount to impermissible double counting and will rarely be sustained.

Contrary to the district court's assertion, therefore, *Blum* does not stand for the proposition "that a requested attorney's fee may be reduced twice—for unsuccessful claims, and again if the final award reflects only partial success." Nor does *Hensley*, which although it reflected the Court's thinking before it explicitly held that the "results obtained" inquiry is subsumed in the lodestar, allowed for only a single reduction of the fee award to reflect a plaintiff's degree of success. *See* 461 U.S. at 434–36, 103 S.Ct. at 1940–41. In ordinary cases, the "results obtained" or "degree of success" inquiry is indivisible and should not be parsed up.

Our decision in *Quesada* sheds further light on why the double penalty in this case must be considered an abuse of the district court's discretion. In *Quesada*, as in the instant case, the district court reduced the lodestar figure because plaintiff settled for much less than he requested in his complaint. We reversed on the ground that "it is inappropriate for a district court to reduce a fee award below the lodestar simply because the damages obtained are small." At 539–40. We added that the relief obtained in a case may sometimes justify a fee reduction—for example, "if plaintiffs fail to obtain relief on all claims" or "if hours spent on unsuccessful claims were not needed to pursue successful claims." *Id.* But in *Quesada*, no such showing was made. Similarly, defendants have made no such showing in this case, and the district court did not articulate any connection between the settlement figure and the fee award that was not accounted for in the lodestar.[2]

Our decision in *Greater Los Angeles Council on Deafness*, upon which the court

---

**2.** The court did refer in its lodestar analysis to the "substantial amount of effort [that] was directed to defendants against whom no recovery was obtained." Even assuming that this statement would have supported a downward adjustment of the lodestar had it been made under the second step of the "hybrid" analysis, it cannot justify the reduction here from $12,000 to $7,500 because it was used to justify the setting of the lodestar at $12,000. Such an interpolation would necessarily entail both mathematical imprecision and an impermissible double penalty for plaintiff's modest level of success.

relied, is not to the contrary. In that case, we held that the district court abused its discretion by failing to consider the "results obtained" and "degree of success" under either the lodestar or the *Kerr/Johnson* steps of its analysis. *See* 813 F.2d at 222. This holding did no more than confirm the Supreme Court's statement in *Hensley* that "courts must 'consider the relationship between the extent of [a plaintiff's] success and the amount of the fee award.'" 461 U.S. at 438, 103 S.Ct. at 1942, *quoted in Greater Los Angeles Council on Deafness,* 813 F.2d at 222.

By contrast, the instant case does not raise the question of whether a court may totally disregard the "results obtained," but rather, whether it may count this factor twice. We hold that in ordinary cases, such double counting is impermissible. In exceptional cases, such deviations may be proper, but the court must explain why the results of the lawsuit are not adequately factored into the lodestar. Because the district court did not do so, it abused its discretion.

 The fourth factor cited by the court in support of the reduction from $12,000 to $7,500—its doubt that defendants intended to violate plaintiff's civil rights—was also an improper ground on which to base a *Kerr* reduction. We have held as a threshold matter "that a plaintiff cannot be a prevailing party where a defendant's action is only gratuitous." *California Ass'n of the Physically Handicapped, Inc. v. Federal Communications Comm'n,* 721 F.2d 667, 672 (9th Cir.1983), *cert. denied,* 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984); *see also Greater Los Angeles Council on Deafness,* 813 F.2d at 220. But once it is determined that a plaintiff is a prevailing party, a defendant's legal liability is only relevant insofar as it bears on plaintiff's degree of success. *See id.* at 222–23.

The settlement agreement labels Cunningham the prevailing party in this lawsuit, and the government does not seek to overturn this characterization. We therefore do not address the question of whether the County and Sheriff Block acted gratuitously in agreeing to this label. In any event, if the district court wanted to address this factor, it should have done so as a threshold matter, not to justify its *Kerr* adjustment. Or, if the district court meant this factor as a surrogate for the "results obtained" or "degree of success," it should have considered it under the lodestar calculation. In either case, the court abused its discretion.

Because all of the factors relied on by the court to support the downward adjustment were improper, we reverse the second round of reductions and set the attorney's fee award at the lodestar figure of $12,000.

## II. SANCTIONS

 The district court assessed sanctions under Rule 11 in the amount of $4,719. The court justified this penalty on the following grounds:

> [T]he plaintiff's actions against the County of Los Angeles and Sheriff Block were frivolous. When the County filed for summary judgment, the plaintiff failed to file any written opposition to the motion. Finally, at the hearing of the motion, defendant's counsel admitted that there was no evidentiary basis for imposing liability against the County of Los Angeles.

The court also stated "that the naming of officers Brusby and Payne was without factual foundation."

We review *de novo* the district court's conclusion that the facts constitute a violation of Rule 11. *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 828 (9th Cir.1986). "Rule 11 sanctions shall be assessed if the paper filed in the district court and signed by an attorney ... is frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith." *Id.* at 831. "Rule 11 applies only to the initial signing of a 'pleading, motion, or other paper'. Limiting the application of rule 11 to testing the attorney's conduct at the time a paper is signed is virtually mandated by the plain language of the rule." *Oliveri v. Thompson,* 803 F.2d 1265, 1274 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94

L.Ed.2d 689 (1987). Any sanctions for actions later in a proceeding must be based on 28 U.S.C. § 1927, which requires a finding that "counsel has acted 'recklessly or in bad faith.'" *In Re Akros Installations, Inc.,* 834 F.2d 1526, 1532 (9th Cir.1987) (quoting *United States v. Associated Convalescent Enterprises,* 766 F.2d 1342, 1346 (9th Cir.1985); *see Roadway Express v. Piper,* 447 U.S. 752, 757, 100 S.Ct. 2455, 2459, 65 L.Ed.2d 488 (1980); *Zaldivar,* 780 F.2d at 829–32; *Kamen v. American Telephone & Telegraph Co.,* 791 F.2d 1006, 1010 (2d Cir.1986). "For a sanction to be validly imposed, the conduct in question must be sanctionable under the authority relied on." *McCabe v. Arave,* 827 F.2d 634, 639 (9th Cir.1987) (citing *United States v. Stoneberger,* 805 F.2d 1391, 1392 (9th Cir. 1986)).

The district court misconstrued Rule 11 by imposing sanctions for the conduct of the litigation after the signing of the pleadings. Plaintiff's claims were not frivolous at the time they were filed. The fact that some of the claims were later found lacking in evidentiary foundation is irrelevant to the Rule 11 inquiry. Without a finding of recklessness or bad faith, which the district court has not made, sanctions may not be imposed. *See Stoneberger,* 805 F.2d at 1393 (quoting *Roadway Express,* 447 U.S. at 767, 100 S.Ct. at 2464) (sanctions under the court's inherent powers, like those under § 1927, require a specific finding of bad faith); *accord McCabe,* 827 F.2d at 640. We reverse the award of sanctions.

## III. COSTS

 Cunningham argues that the district court erred in refusing to award him his costs. We disagree. Cunningham's failure to comply with the mandatory filing provisions of Central District Local Rule 16.3 barred his recovery of costs.

 Cunningham requests an award of attorneys' fees incurred in prosecuting this appeal. He correctly notes that section 1988 fees are ordinarily available to compensate attorneys for successful litigation of their fee applications, including work on appeal. *See Cabrales v. County of Los Angeles,* 864 F.2d 1454 (9th Cir.1988); *Greater Los Angeles Council on Deafness v. Community Television of Southern California,* 813 F.2d 217, 223 (9th Cir. 1987). We may deny a request for attorneys' fees on appeal if we find that "special circumstances" exist. *Abu–Sahyun v. Palo Alto Unified School District,* 843 F.2d 1250, 1253 (9th Cir.1988); *Seattle School District v. Washington,* 633 F.2d 1338, 1348 (9th Cir.1980), aff'd, 458 U.S. 457, 102 S.Ct. 3187, 73 L.Ed.2d 896 (1982); *Aho v. Clark,* 608 F.2d 365, 367 (9th Cir. 1979); *see Teitelbaum v. Sorenson,* 648 F.2d 1248, 1250 (9th Cir.1981).

To determine whether special circumstances exist, we examine two factors: (1) whether awarding fees would further the congressional purpose of the Act (42 U.S.C. § 1988), and (2) the balance of equities. *Abu–Sahyun,* 843 F.2d at 1253; *Seattle School District,* 633 F.2d at 1348; *Aho,* 608 F.2d at 367; *see Teitelbaum,* 648 F.2d at 1250. The purpose of the Act is to create an incentive for injured parties to seek judicial review of civil rights claims, *Ackerley Communications, Inc. v. City of Salem,* 752 F.2d 1394, 1396 (9th Cir.1985), and to encourage voluntary compliance with the law. *Seattle School District,* 633 F.2d at 1348. It appears that Cunningham's claim satisfies the "congressional purpose" prong. Congress sought to encourage civil rights suits, irrespective of the probability of success. *See Teitelbaum,* 648 F.2d at 1249–50 (novelty of action is not a special circumstance). The "prevailing party" requirement serves to screen unfounded actions. Awarding Cunningham fees in this case would encourage civil rights suits.

 Cunningham does not fare as well when we consider the balance of equities. Cunningham's attorney tested the boundaries of unethical conduct. Although we have reversed the imposition of Rule 11 sanctions, we noted that Cunningham's attorney made no effort to prove his case against the dismissed defendants. We further noted that section 1927 sanctions might have been appropriate had the trial court made a formal finding of bad faith. It would be unjust to allow an attorney to

profit so much from work made necessary largely by his own questionable conduct. If Cunningham had never brought suit against those defendants who were later dismissed, there would have been no occasion to reduce the lodestar in the first place. We therefore hold that based on the balance of equities, special circumstances exist. Cunningham's request for attorneys' fees on appeal is denied.

REVERSED IN PART AND AFFIRMED IN PART.