[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In the month of May, 1986, the plaintiff instituted this proceeding against the Town of Bridgewater, its Planning Zoning Commission, its Inland/Wetlands Commission and, with one exception, each and every commissioner of those municipal agencies in their individual capacities. However, the case was withdrawn as to all but four of those individual commissioners at the commencement of trial. The action successfully invoked Title 42 U.S.C. § 1983 on a multitude of theories of recovery. After a plethora of pleadings, the case was finally reached for trial in December of 1989. Immediately prior to jury selection, if not simultaneously therewith, the plaintiff requested leave of the court to amend his complaint. After lengthy arguments which were thoroughly briefed by both parties, as was the practice throughout this entire litigation, this court granted the motion in part and ordered that the complaint be set forth in four separate "counts."[1] Those four counts were allegations of procedural due process; substantive due process; conspiracy; and, antitrust violations. The case was tried throughout much of January and into February. The issues of procedural due process and antitrust violations were charged out by the court leaving the jury to decide the questions of substantive due process and conspiracy. CT Page 3172
On February 9, 1990, the jury returned a verdict of both compensatory and punitive damages for the plaintiff in the aggregate amount of one million one hundred thousand ($1,100,000.00) dollars. The parties continued to vigorously and actively contest post-trial motions and on May 22, 1990, this court denied the defendants' motions to set aside the verdict. That decision brought to a close the trial stage of this litigation, began the appellate process and this final action to determine the plaintiff's entitlement to an award of counsel fees under Title 42 U.S.C. § 1988. The defendants assert, in the alternative, that the plaintiff is not entitled to the award of any fees or, if so, a substantially diminished amount. True to their performance during the trial, the hearings on this petition became highly adversarial, sometimes antagonistic, and at certain times threatened to become personal. The arguments and memoranda of counsel address several considerations applied by the Federal courts in what may be termed "1988 Litigation." The court will examine those which are relevant to this case.
The defense, both in its oral argument and in its brief, urges the court to reject a fifty-five (55) page document which the plaintiff has submitted as his billing record in this litigation. They assert that this documentation does not fall within the purview of the meaning of contemporaneous time records as discussed by the Second Circuit which has held that such records must specify for each attorney the date, the hours expended and the nature of the work clone in order to pass muster. They draw upon New York Association for Retarded Children, Inc. v. Carey,711 F.2d 1136, and secondarily upon Davis v. Little,118 F.R.D. 304, 306 (D. Conn. 1988); Orshan v. Macchiarola,629 F. Sup. 1014, 1019 (E.D.N.Y. 1986) as what purports to be support for their argument. They also cite to Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986) for an interpretation of Carey. "In . . . a case involving an attorney's failure to maintain contemporaneous time records, we stated flatly that any attorney `who applies for court-ordered compensation in this Circuit for work done after the date of this opinion must document the application with contemporaneous time records.'" We held that no attorneys' fees could be collected if a fee application was not adequately documented after the date of the Carey opinion.
Other courts have held that affidavits summarizing time logs are acceptable and that opposing counsel must move for their production if an inspection of contemporaneous time records is desired. Carey, however, places the burden of producing these records on the attorney submitting the fee CT Page 3173 requests. See New York State Association for Retarded Children, Inc. v. Carey, supra, 1148, 1154. Beyond this, the importance of the records is so critical in determining a reasonable fee as to make their production by the most efficient method possible a prerequisite.
At this point, however, they stray from both reality and from accuracy in their utilization of Carey. The contention that time records stored in an attorney's computer do not meet the requirement of contemporaneous time records is without merit. They cite no case that supports that hypothesis. Attorneys seeking counsel fees under this section must submit a full and accurate accounting of their time. The accounting must be based on contemporaneous records, it must give specifics such as the dates and nature of the work performed. Inmates of the Maine State Prison v. Zitnay, 590 F. Sup. 979, 984 (D. Me. 1984). In Zitnay, the language refers specifically to contemporaneous time records and demands that reports on attorney's fees only be based on such records. It necessarily follows that a computer printout detailing the work performed would be sufficient to justify an award if such computer printouts were based on contemporaneously kept time records.
Records transferred to counsel's computer were established to be based on time sheets contemporaneously kept by the attorney working on this litigation. The simple fact that records were transferred to a computer does not detract from the contemporaneous nature of such records and create a situation where the rule set forth in Carey is not satisfied. A reading of Carey discloses there was no detailed record of the utilization of the attorney's time. The computer printout here in issue is drawn from the computer memory bank after being generated by the entry of the attorney's time records, the services rendered and the time that the services were performed. It detailed the hourly activities and the identity of the attorneys laboring on this case. The defendants' reliance on Carey as they perceive it in their arguments and memorandum is inapposite and cannot be permitted to shield them from the payment of counsel fees. This court holds that the entry from daily time sheets into a computer memory bank and the subsequent generation of a detailed statement of account, such as is presented in this case, are in fact contemporaneous time records within the meaning of Carey.[2]
". . . In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this Title IX of Public Law 92-318 or Title VI of the Civil Rights Act of 1964, the court in its discretion, may allow the CT Page 3174 prevailing party, other than the United States, a reasonable attorney's fees as part of the cost." 42 U.S.C. § 1988. The statutory award of attorney's fees should be accorded broad interpretation as the statute is remedial in nature. The basis for allowing such a broad interpretation is to facilitate private enforcement of civil rights and to allow an attorney to explore and develop every aspect of the case. Williams v. City of Fairburn, Ga., 702 F.2d 973, 976 (11th Cir. 1983).
The determination of reasonable counsel fees has become known as the "Lodestar" figure. See Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air, 478 U.S. 546,565, 106 S.Ct. 3088, 3098 (1986). The Lodestar is determined by multiplying the reasonable number of hours expended by a reasonable hourly rate. Blum v. Stenson,465 U.S. 886, 896 (1984). The determination of that figure should be accorded presumptive weight and be modified only in certain rare and exceptional cases. Delaware Valley Citizens' Counsel for Clean Air, supra, citing therein Blum v. Stenson, supra, 899; see DeFillipo v. Morizio,759 F.2d 231, 235 (2nd Cir. 1981). A reasonable hourly rate is that normally charged for similar work done by attorneys of like skill in the community. Cohen v. West Haven Board of Police Commissioners, 638 F.2d 496, 506 (2nd Cir. 1980). "While a district court's determination of the proper award is to be accorded deference, the latitude of its discretion is narrowed by a presumption that successful civil rights litigants should recover reasonable attorney's fees unless special circumstances render such an award unjust." DiFillipo v. Morizio, supra.
To inform and assist a court in the exercise of this discretion, the burden is on the fee applicant to produce satisfactory evidence in addition to the attorney's own affidavits that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. Blum v. Stenson, 79 L.Ed.2d 891, 900 n. 11 (1984). There are twelve (12) factors to be considered in the determination of reasonable counsel fees under 42 U.S.C. § 1988. These are: (1) the time and labor required; (2) the novelty and difficulty of the question presented, (3) the skill required to perform those legal services; (4) the preclusion of other employment by the acceptance of the case; (5) the customary fee in the community; (6) whether the fee was fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the nature and length of the professional. relationship with the client; (10) the undesirability of the CT Page 3175 case; (11) the experience, reputation and ability of the attorney; and, (12) the awards in similar cases. King v. Greenblatt, 560 F.2d 1024, 1026-27 (1st Cir. 1977); Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).
In the calculation of attorney's fees, many of the twelve (12) factors are subsumed in the Lodestar determination as a matter of Law. For instance, inadequate documentation, the quality of representation and the results obtained are all among those factors subsumed in the initial Lodestar resolution. Cunningham v. County of Los Angeles,869 F.2d 427, 432-34 (9th Cir. 1988). It must certainly be understood that an Appellate Court will not and should not disturb a trial court's determination of counsel fees unless an abuse of discretion has occurred. Hamilton v. Daley,777 F.2d 1207, 1212 (7th Cir. 1985).
The defendants in their opposition to the award of counsel fees have raised every conceivable argument against such an award. The court will speak to three of those at this time and those three are: Lack of "Billing Judgment"; Travel Time, and, Historic Rates. "Billing Judgment" is defined as the deletion of excessive, redundant, or otherwise unnecessary expenditures of time. The plaintiff asserts that certain adjustments were made to reflect what are called brainstorming sessions and that he attempted to reduce time entries of law clerks to the level of what a reasonable charge would be for someone performing a secretarial function. The criteria for and the amount of such adjustments are not specified, however, nor is there any reference in the statements submitted indicating when and the extent of such adjustments. Hours not properly billed to one's client (emphasis supplied) are not properly billed to one's adversary pursuant to the statutory authority. The district courts have been directed to exclude hours that were not reasonably expended. Hensley v. Eckenhart, 416 U.S. 424, 434, 76 L.Ed.2d 40, 50. See Riverside v. Rivera, 477 U.S. 561, 569 n. 4.
The courts seem to seize upon travel time as an item which should be substantially discounted in the exercise of billing judgment. There are instances where courts have refused to award any fees for travel time. See Chrapling v. Uniroyal, Inc., 509 F. Sup. 442, 445-55 (N.D. Ind. 1981) aff'd in relevant part, 670 F.2d 760 (7th Cir. 1982), while other courts have severely discounted awards for such time. See Keyes v. School Dist. No. 1, 439 F. Sup. 393, 409-10
(D. Colo. 1977). Our own district court in Connecticut in Rose v. Heintz, 671 F. Sup. 901, 905 (D. Conn. 1987), CT Page 3176 compensated travel time to the extent of fifty (50) percent. That fifty (50) percent reduction has been approved by the Second Circuit in In re A. H. Orange Product Liability Litigation, 818 F.2d 226, 238 (2d Cir. 1987). In this case, no support for any travel time billing is manifested. Therefore, no award is allowed for travel time.
If a single rate is claimed for a case of several years duration, the plaintiff must establish that the rate claimed was reasonable for the duration of that case. The Second Circuit has adopted this analysis for litigation extending more than three years. See New York State Association for Retarded Children, Inc. v. Carey, supra, 1153; Hillburn v. Commissioner's of Income Maintenance,683 F. Sup. 23, 25 (D. Conn. 1987); Wilkinson v. Forst, Civ. No. H-80-755 (JAC). Carey stands for the proposition that historic rates should be applied to the earlier phases of the litigation rather than current rates, and Lyons v. Cunningham, 583 F. Sup. 1147, 1154 (S. D. N.Y. 1983) follows that rule.
Assuming arguendo, that the plaintiff has failed to provide additional evidence of prevailing market rates for lawyers of reasonably comparable skill, experience and reputation as that of his own attorney, the District Court, sua sponte, has examined rates recently awarded in its district to determine fair and reasonable market rates. See Natale v. City of Hartford, et al. No. H-86-928 (AHN) (D. Conn. April 18, 1989). It then cited several cases which dealt primarily with the reasonableness of the hourly rate as measured against the experience of the attorneys providing those rates. It cited Letteney v. Board of Trustees of Regional Community Colleges, No. H-86-952 (AHN) slip op. (D. Conn. October 27, 1988); West v. Manson, No. H-83-366 (AHN), slip op. (D. Conn. January 15, 1988); Gibbs v. Southeastern Investment Corp., No. H-86-565 (PCD), slip op. (D. Conn. Feb. 1, 1989); Aumwood v. Harry Brandt Booking Office, Inc., No. N-79-144 (PCD), slip op. (D. Conn. April 11, 1988); Clark v. Stach, 674 F. Sup. 969, 972 (D. Conn. 1987); Tuesday's Den, Inc. v. Bucci, No. B-87-197 (WWV) slip op. (D. Conn. January 27, 1988); McCarthy v. Heintz, No. H-85-597 (MJB), slip op. (D. Conn. December 2, 1987); Oliver v. Dignoti, No. H-84-205 (MJB), slip op. (D. Conn. April 30, 1986).
It neither tortures imagination or logic for this court to pursue the same practice in its analysis of the issues of billing judgment and historic rates. In addition thereto and not in substitution therefor, it will utilize its own common sense and experience in its determination of the CT Page 3177 Lodestar. It is quite satisfied that by either standard, its determination will fall clearly within the purview of and satisfy the mandates of Sec. 1988.
One of the more significant challenges that the defendants mount falls within the concept of excessive time spent on identified tasks. They focus on seven specific categories as examples thereof, which examples represent their major objection on this aspect. Those seven are:
1. The expenditure of seventy-two point zero five (72.05) hours exclusive of court appearance and argument in response to the motion for summary judgment filed by the defendant Kinsolving in January of 1988.
2. The expenditure of forty-three point seven (43.7) hours in the preparation of the amended complaint filed November 14, 1989.
3. The expenditure of forty-two point seven (42.7) hours preparing an objection to the defendants' request to revise in November, 1989.
4. The expenditure of thirty-one point one zero (31.10) hours in response to the plaintiff's motion for summary judgment in July of 1989, again exclusive of court time and argument.
5. The expenditure of eighty-seven point four five (87.45) hours on the plaintiff's request to charge and jury interrogatories.
6. The expenditure of twenty point one zero (20.10) hours preparing the second revised complaint.
7. The plaintiff's claim for compensation for one hundred seventy-five (175) hours of general research time.
The court will address these in the order chosen by the defense:
1. Of the expenditure of seventy-two point zero five (72.05) hours, fifty-one point five zero (51.50) hours were consumed in drafting by an associate member of the firm who at the time was charged at the rate of eighty ($80.00) dollars per hour. Attorney Murphy dedicated some twelve (12) hours of his fifteen point three zero (15.30) hours to drafting. The balance of the figure claimed is attributed between the associate and senior partner in the law firm. The time expended on that response strikes an unreasonable CT Page 3178 chord. There is no explanation beyond that offered in the billing. The court, accordingly, reduces the fifty-six point seven five (56.75) hours spent on drafting and conferences to eighteen (18) hours. It also reduces the senior partner's time to twelve (12) hours.
2. The time allegedly allocated to the amended complaint of November of 1989 discloses that the senior partner devoted fourteen point seven zero (14.70) hours to something called attention to the file, conferences and preparation. The paralegal dedicated eight point five zero (8.50) hours working on the amended complaint on peremptory challenges, on a motion to limit those challenges, and on an estoppel issue. A law student charged twenty point five zero (20.50) hours for drafting, revision, review, research and conferences. After careful consideration of the explanation for these charges, the court reduces the law student's hours from twenty point five zero (20.50) hours to ten (10) hours. The paralegal's time from eight point five zero (8.50) hours to five point zero (5.00) hours and the senior partner's time from fourteen point seven zero (14.70) hours to eight (8) hours.
3. In billing the objection to the request to revise, the firm's senior partner charged a total of ten point two zero (10.20) hours given to preparation. The paralegal recorded twenty-eight (28) hours and a second named partner expended three point zero (3.00) hours reviewing the revised complaint and to an interoffice conference. An associate counsel claims to have utilized one point five zero (1.50) hours in a conference with the senior partner. Based upon the explanation of the charges, the court reduces the paralegal's time to fourteen (14) hours and the senior partner's time to six point zero (6.00) hours. The conference with the senior partner is disallowed in its entirety. The three (3) hours charged by the named partner is also disallowed in its entirety.
4. The response to the defendant's motion for summary judgment in the first count indicates the senior partner charging six point six zero (6.60) hours in attention to the file and preparation of memorandum in opposition to the motion. The law student paralegal charged twenty-one point four zero (21.40) hours to research of a draft of the memorandum and revised motion in opposition to the motion for summary judgment. A second named partner charged two point zero (2.00) hours to research for summary judgment. The court makes no adjustment for the senior partner's time on this project. The law student's paralegal time is, however, reduced to twelve (12) hours and the second named partner's CT Page 3179 claim for three (3) hours is disallowed.
5. The time indicated by the records devoted to the request to charge and jury instructions discloses that the paralegal charged forty-five (45) hours to work on the preliminary request to charge, research on the request to charge and on the drafting of interrogatories. The firm's associate charged eleven point eight five (11.85) hours to conferences, research and draft jury instructions and several conferences respecting special defenses and jury instructions. The second named partner devoted twenty-seven point six zero (27.60) hours to research on the requests to charge, jury instructions and a review of the special defenses together with a memorandum. The third named partner devoted some three (3) hours to this project and a conference and review of the interrogatories and jury instructions. Without justification beyond the allegations set forth in the itemized statement, the court is constrained to reduce the paralegal hours to twenty-two point five zero (22.50) hours, the associates time to six point three zero (6.30) hours, the second named partner's time to fifteen point zero (15.00) hours and declines to reduce the third named partner's time in this instance.
6. The time expended on the second revised complaint shows that the paralegal expended fourteen (14) hours on the second revised complaint and the senior partner expended six point one zero (6.10) hours in the preparation of the second revised complaint, research and attention to the file. The court reduces the fourteen (14) hours for the paralegal to eight point zero (8.00) hours but declines to reduce the senior partner's charge.
7. The charges allocated to general research not associated with the drafting and pleadings presents the court with a dilemma of sorts. There is no question in its mind that substantial time was devoted to research and that much of that time was necessary without regard to the experience of any counsel representing the plaintiff in this file. However, justification rears its ugly head as the second horn of the dilemma and makes it impossible for the court to accept the hours charged at face value. Accordingly, the law student paralegal's charge of twenty-seven point zero (27.00) hours is reduced to thirteen point five zero (13.50) hours. The paralegal's time of seventy-nine point three zero (79.30) hours is reduced to forty-five point zero (45.00) hours. The third named partner's time of forty-one point eight zero (41.80) hours is reduced to twenty point five zero (20.50) hours. The associate's time of fourteen (14) hours is reduced to ten (10) hours and the court declines to adjust CT Page 3180 the senior partner's hours of thirteen point three zero (13.30) hours. In making these adjustments as well as the subsequent adjustments, the court has considered and applied the rationale of the District Court and Second Circuit decision available to it through counsel and through its own research in reaching these conclusions.
The billing records submitted by the plaintiff's counsel claimed a total of seventeen hundred sixty-six point two five (1766.25) hours and a charge of two hundred eighteen thousand and twenty-seven ($218,027.00) dollars. The hourly rates of those involved varied and will be discussed later in this memorandum. The claim was subsequently amended to eighteen hundred two point four five (1802.45) hours and amount of two hundred twenty-one thousand nine hundred ninety-one dollars and twenty-five ($221,991.25) cents. Of that sum, four thousand five hundred forty-eight dollars and four ($4,548.04) cents is attributable to costs and disbursements. A subsequent amendment increased the claim for counsel fees to two hundred thirty-six thousand seven hundred seventy-five dollars and fifty-nine ($236,775.59) cents.
Prior to the submission of these amounts, the plaintiff's claim for counsel fees was expressed on the basis of a contingency fee for three hundred sixty-six thousand six hundred sixty-six dollars and sixty-six ($366,666.66) cents. That fee represents an agreement between the plaintiff and his counsel and will not be discussed in great detail except as it may affect the court's determination of the Lodestar. The court, after considering the defendants' arguments on the seven illustrations and primary objections, has ordered a reduction of two hundred sixteen point nine three (216.93) hours which, when applied to the total hours claimed by the plaintiff's counsel of eighteen hundred two point four five (1802.45) hours, yields an adjusted total hours of fifteen hundred eighty-five point six two (1585.62) hours.
The defendants in their assault upon the plaintiff's arguments express their own ten (10) considerations which they would appear to substitute for or expand the criteria set forth in King v. Greenblatt and Johnson v. Georgia Highway Express, supra. They concede, as indeed they must, that the plaintiff is the prevailing party on at least some issues in the litigation. The court agrees with their premise that the plaintiff must identify the prevailing market in which the reasonableness of the Lodestar be evaluated. The Second Circuit has declared that the relevant market is the district in which the reviewing court sits. Polk v. N.Y. State Dept. of Correctional Services, CT Page 3181722 F.2d 23, 25 (2nd Cir. 1983). The Lodestar determination requires an examination of the reasonable hourly rate for each attorney (emphasis supplied) for whose time reimbursement is sought. The hourly rate of attorneys with experience and expertise in the relevant area is a significant contribution to this factor. Blum v. Stenson, supra, 895 n. 11. The defense in citing Maturo v. National Graphics, Inc., 722 F. Sup. 916, 932 (D. Conn. 1989) has inadvertently strengthened the plaintiff's position by the recitation of the premise that "in weighing trial counsel's experience, ability and reputation, the court should focus on the particular nature of the case, not counsel's general legal experience." This is somewhat damaging to the position espoused that counsel's lack of experience should be considered to minimize any such award.
Despite the lack of a direct statement from the Bench in our District Court and from the Second Circuit, this court as well as that Bench consciously or subconsciously does reach an opinion as to the significance of the litigation, the quality of the representation in terms of preparation and presentation, and the result received. While the District Courts tend to substantially discount the petition for counsel fees under Sec. 1988, there is nevertheless the common sense, perhaps somewhat philosophical approach that the various Benches draw upon in determining the ultimate award. To a degree a judicial officer is entitled to rely on the ordinary dictates of common experience and on his or her own common sense. Spinelli v. United States, 393 U.S. 410,415-19, 89 S.Ct. 584, 21 L.Ed.2d 637; State v. Jackson,162 Conn. 445. This court draws some support for that premise from a comment by Nevas, J. writing in Natale v. City of Hartford, et al. No. H-86-928 (AHN) at page 10 wherein he recites, "Considering these recent awards with in the district as well as THIS COURT'S EVALUATION OF COUNSEL'S SKILL AND EXPERIENCE (emphasis supplied) to other members of the bar, . . . Therefore, after evaluating the rates approved in other actions in this district . . . . This court believes, therefore, that in addition to the standards set forth infra and all of them, together with the utilization of common sense and comparison of other awards, this hypothesis is justified."
In arriving at the figure of counsel fees which the plaintiff seeks in this case, i.e., two hundred twenty-one thousand nine hundred and ninety-one dollars and twenty-five ($221,991.25) cents, he allocates the following time at the following hourly rates.
A. Attorney Neil Murphy, the firm's senior partner, CT Page 3182 is a veteran of something in excess of twenty (20) years in litigation. He as the lead counsel in this case claimed eight hundred twenty point zero five (820.05) hours at one hundred seventy ($170.00) dollars per hour for a figure of one hundred thirty-nine thousand one hundred ninety-seven dollars and fifty ($139,197.50) cents. He acknowledges that this is his first experience in trial under Title42 U.S.C. § 1983. His primary experience is in the criminal law during which time he has tried approximately five cases to a verdict. The defense in its brief recites that a substantial amount of time spent on this case by plaintiff counsel's firm, was required to learn the law applicable of the case. It follows that little of the efficiency which comes from experience which contributes to the justification of higher hourly rates was present while the matter was being litigated. Despite the fact that the court was extremely impressed by his preparation and trial ability, the decisions in this District and this Circuit mandate a reduction of the hours as well as the hourly rate charged by Attorney Murphy.
The court, in accordance with the standards existent in the federal courts in general and our district and circuit in particular, finds the hours and rates to be excessive and reduces the hours to seven hundred twenty-five point eight five (725. 85) and the hourly rate from one hundred seventy dollars ($170.00) per hour to ninety ($90.00) dollars per hour. The mathematical product of that reduction produces a figure of sixty-five thousand three hundred twenty-six dollars and fifty ($65,326.50) cents which the court awards to Attorney Murphy for his individual performance in this
Attorney Walker, the firm's associate, claims to have dedicated one hundred forty-one point two five (141.25) hours at two different rates and produced a charge of fifteen thousand five hundred forty-eight dollars and seventy-five ($15,548.75) cents. His lack of experience, his absence from the trial when considered together with the time spent learning the law in this type of litigation, requires this court to reduce the hours charged to seventy-three point five five (73.55) and causes a reduction in his hourly rate from one hundred thirty-five ($135.00) dollars charged to seventy ($70.00) dollars per hour. The product of these components is five thousand one hundred forty-eight dollars and fifty ($5,148.50) cents.
B. Attorney Laudati, the second named partner in the firm, is apparently not a trial lawyer. Again, the time devoted by him to this file is thirty point seven five (30.75) hours at a charge of one hundred fifty-five ($155.00) dollars per hour for a total of four thousand seven hundred CT Page 3183 and fifty-seven dollars and fifty ($4,757.50) cents. The court is constrained to reduce his hours to twenty-two point zero (22.00) hours and to reduce his hourly rate from one hundred fifty-five ($155.00) dollars per hour to seventy-five ($75.00) dollars per hour generating an award of one thousand five hundred ($1,500.00) dollars. Attorney Kiel, the third named partner in the firm, is not represented as being a trial lawyer and he and Attorney Laudati may be described as being office lawyers involved with real estate, estate practice business and other commercial transactions. He claims to have expended one hundred thirteen point five zero (113.50) hours at one hundred forty-five ($145.00) dollars per hour for a charge of fifteen thousand six hundred seventy-nine ($15,679.00) dollars. Again, the court reduces his hours to sixty-one point zero (61.00) hours and his hourly rate to seventy-five ($75.00) dollars per hour and awards a fee for his services of four thousand five hundred seventy-five ($4,575.00) dollars.
C. Attorney Losee, a former partner in the firm, who apparently was responsible for the firm's representation of the plaintiff and whose experience and specialization if any is unknown to the court, claims to have expended twenty-five point six five (25.65) hours prior to leaving the firm at one hundred twenty-five ($125.00) dollars per hour for a charge of three thousand two hundred six dollars and twenty-five ($3,206.25) cents. Of the hours charged, only nine point four zero (9.40) hours involving conferences, some review and some research are attributable to this case after November 11 of 1986 at which time the itemized billing begins. The court has no idea of the services rendered prior to that time or the charge therefor and, accordingly, reduces the hours claimed by Mr. Losee to six point zero (6.00) hours and reduces his hourly charge to eighty ($80.00) dollars per hour for a charge of four hundred eighty ($480.00) dollars.
D. Beth Griffin was a paralegal until such time as she was admitted to practice at a time after the verdict was delivered. Again, the time devoted to learning the law in this type of action, researching and preparation of documents required what might well be characterized as an inordinate amount time expended by her. Her time charged was five hundred seventy-four point one five (574.15) hours at seventy ($70.00) dollars per hour which resulted in the charge of thirty-nine thousand eight hundred two dollars and twenty-five ($39,802.25) cents. Again, for the same reasons expressed and incorporating the rationale utilized, her hours are reduced to three hundred seventy point eight five (370.85) hours and the hourly rate to fifty ($50.00) dollars and a fee of eighteen thousand five hundred forty-two dollars CT Page 3184 and fifty ($18,542.50) cents which the court finds to be reasonable and proper under the circumstances.
G. Finally, Beverly Weinburg, a law student paralegal logged ninety-seven point one zero (97.10) hours in this file at a charge of fifty ($50.00) dollars per hour. It is difficult to determine the quality of her work from the contemporaneous time records and the court applies the same standards in reducing her hours from the claimed amount to forty-seven point six two (47.62) hours and the rate to thirty-five ($35.00) dollars per hour in its award of sixteen hundred sixty-seven dollars and seventy ($1,667.70) cents to her.
The court in its determination of the Lodestar with its standards of justification, is once again extremely aware of the decisions of this District and this Circuit and the almost extreme conservative approach to the award of fees in these cases. In summary, the court also has considered without limitation thereto, the excessive and unnecessary time arising out of a lack of experience, a minimum albeit sufficient specificity of documentation for each person, the unsuccessful counts of the complaint which were not totally unrelated to those successfully pursued with minimal exception, the historic rates, and billing judgment time considerations previously indicated of those involved. It has had the benefit of four (4) affidavits from trial attorneys whose practices involve Sec. 1983 litigation. The affidavits supported the plaintiff's claims for the time expended and rates charged. The defendants have provided the court with contradictory affidavits from other attorneys with substantial experience in this field. All of the affidavits were expressed in the amount of hourly rates and the reasonableness thereof as well as the respective experience in this facet of the practice.
With all these elements, criteria or standards in mind, the court has made its determination of a reasonable number of hours at a reasonable rate for each one of the attorneys and/or paralegals participating in this litigation and awards a fee of ninety-seven thousand two hundred forty dollars and twenty ($97,240.20) cents as the Lodestar in this case. The award is the product of the reduced hours for the individuals involved together with the reduction in the amount of the fees said individuals charge. Included here in are the findings reached on the defense's seven examples which seem to be the primary focus of what they believe and claim to be unreasonable time and rates. (See supra.)
In addition thereto, the plaintiff's counsel has CT Page 3185 submitted a claim for reimbursement of disbursements made in preparation for the prosecution of this case. The amount claimed of four thousand five hundred forty-two dollars and four ($4,542.04) cents as set forth at the end of his contemporaneous time records. Those records including the explanation thereof permit the court to find that the disbursements were necessary, reasonable and proper and, in accordance with that finding, awards the sum of four thousand five hundred forty-eight dollars and four ($4,548.04) cents as disbursements to which the plaintiff is entitled in addition to the Lodestar determination reached by the court.
The last issue to be addressed herein is the question of fee enhancement. Once one of the King or Johnson factors is utilized expressly or implicitly in the determination of the Lodestar fee, it should not provide an independent basis for increasing the fee award, for to do so would be double counting. Blum v. Stenson, supra, 900; see Pennsylvania v. Delaware Valley Citizens' Council,478 U.S. 546, 565-66 (Delaware Valley I). Many of the twelve factors utilized in that determination have been acknowledged as being subsumed in the Lodestar as a matter of law and therefore these factors may not serve as an independent basis for a further adjustment of once a reasonable attorney's fee has been established. Cunningham v. County of Los Angeles,869 F.2d 427, 432 (9th Cir. 1988). It has also been held that neither the complexity nor the novelty of the issues is an appropriate factor in determining whether to increase the basic fee award where the novelty and complexity of issues were presumably fully reflected in the number of billable hours recorded by counsel. The results obtained standing alone do not provide a sufficient basis for an increase in the award. Blum v. Stenson, supra, 903.
The determination of a reasonable attorney's fee permits the court to look at the presence of a pre-existing fee agreement. Such a contingent fee contract does not, however, impose an automatic ceiling on any award of counsel fees. Blanchard v. Bergeron, 109 S.Ct. 939, 944. In one or more instances, the trial court has held that the unremitting recalcitrance of the defendants in a lawsuit may constitute an appropriate basis for the enhancement of the fee. Wells v. Hutchinson, 499 F. Sup. 174, 211-12 (E.D. Texas 1980); Martino v. Carey, 568 F. Sup. 848, 851 (D. Or. 1983). Regardless of the circumstances, it is clear that whenever a trial court augments or reduces a Lodestar figure, it must state its reasons for doing so as specifically as is possible. Cohen v. West Hartford Board of Police Commissioners, 638 F.2d 496, 506 (2nd Cir. 1980). Where a plaintiff obtains excellent results, his attorney should be CT Page 3186 fully compensated for all time reasonably (emphasis supplied) expended on the litigation. Popham v. City of Kennesaw, 820 F.2d 1570, 1578 (11th Cir. 1987), citing therein Hensley v. Eckart, supra, 435.
This court in its award of counsel fees and expenses is not inclined to consider in general the existence of a contingency agreement with respect to the amount of the award which it has determined. However, it will consider in particular the question of a contingency agreement as it applies to the risk of nonpayment which is inherent in any contingency fee agreement and which has been held to be a proper basis for the enhancement of fees. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, supra, 731, 735.
In the event that the plaintiff's claims are only partially successful and the claims on which he did prevail may be said to be distinctly different claims, based on different facts and legal theories, the court cannot award any fee for service on the unsuccessful claims. However, if the unsuccessful and the successful claims involve a common core of facts or are based on related legal theories as here existed, the court must compare the plaintiff's overall relief with the number of hours reasonably expended on the litigation. Time reasonably spent by the plaintiff's attorneys in establishing and justifying their fee is also compensable under Sec. 1988. Gagne v. Maher, 594 F.2d 336,344 (2nd Cir. 1979) aff'd 65 L.Ed.2d 653 (1980). Fee enhancement is also appropriate to compensate for delay in payment. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, supra, 716-17; Missouri v. Jenkins,109 S.Ct. 2463. The latter case also indicates that the application of a current rate rather than historic hourly rates may well be appropriate in a delay situation as a means of enhancement.
The court has commented upon counsel's preparation, articulation, presentation as well as the excellent result achieved. It would hardly be realistic to overlook and ignore the precedential value of the results. Research has indicated that this litigation was a case of first impression in this jurisdiction. The significance of the deprivation of the property owners rights by administrative boards and the individual members thereof had occasionally been discussed but never litigated. While it must be conceded that the conduct of the town and the individual members of those boards was egregious, its precedential value is nonetheless significant. The message of outrage and disgust for this type of governmental and individual abuse of one's CT Page 3187 constitutional rights expressed by this jury cannot be discounted. That message was accentuated by the award of punitive damages against four of the individual members of those administrative boards. Precedential value cannot be completely subsumed in this case. See Hensley v. Eckenhart, supra, 435.
The court is also quite mindful of the extreme adversarial scenario which was demonstrated throughout the course of this trial. While it is not prepared to say that counsel became personally involved, the adversarial relationship yielded an inordinate difficulty for counsel in the trial of the issues as presented to the court and to the jury. Therefore, the court, in accordance with the precedents cited, the affidavits submitted by experienced civil rights litigators, its own common sense and impressions, consistent with the standards set forth in this District and this Circuit, concludes that the plaintiff is entitled to an enhancement of his fee to the extent of twenty (20) percent of the Lodestar figure. This adjustment computes to nineteen thousand four hundred forty-eight ($19,448.00) dollars and is added to the Lodestar figure of ninety-seven thousand two hundred four dollars and twenty ($97,204.20) cents. The product of that computation results in an award of counsel fees totaling one hundred sixteen thousand six hundred eighty-eight dollars and twenty ($116,688.20) cents.
The court is also permitted to award interest on those attorney's fees. Gates v. Collier, 616 F.2d 1268, 1278
(5th Cir. 1980); Preston v. Thompson, 565 F. Sup. 294, 297
(N. D. Ill. 1983). That interest will be awarded at the rate provided in Title 28 U.S.C. § 1961 (a), and not in accordance with any fixed rate set by state statute. Vaughn v. Board of Education of Prince George's County,627 F. Sup. 837, 838 (D. Md. 1985); Preston v. Thompson, supra, 300. Accordingly, interest is applied to the award in accordance with the applicable section from and after July 1, 1990. Interest on an award of counsel fees should commence on the date of the judgment or in the alternative, if there is a delay in entering such judgment, on the date reasonably close to the first date upon which the court could have completed its own work (emphasis supplied) relating to the issue of counsel fees. Vaughns v. Board of Education of Prince George's County, supra, 837.
Moraghan, J.