813 F.2d 217
 GREATER LOS ANGELES COUNCIL ON DEAFNESS; Marcella M. Meyer;
Sue Gottfried, Plaintiffs-Appellants,
v.
COMMUNITY TELEVISION OF SOUTHERN CALIFORNIA; James L.
Loper; William J. Lamb; U.S. Dept. of Health, Education &
Welfare; Federal Communications Commission; Corporation
for Public Broadcasting; Public Broadcasting Service;
California Public Broadcasting-Commission, Defendants-Appellees.
GREATER LOS ANGELES COUNCIL ON DEAFNESS, INCORPORATED, a
California nonprofit corporation; Marcella M. Meyer and Sue
Gottfried, for themselves & in behalf of all others
similarly situated, Plaintiffs-Appellees,
v.
COMMUNITY TELEVISION OF SOUTHERN CALIFORNIA, doing business
as KCET, Defendant,
and
Federal Communications Commission; Department of Education,
and Department of Health & Human Services,
Defendants-Appellants.
 Nos. 86-5525, 86-5559.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 3, 1987.
Decided March 18, 1987.
 
 Stanley Fleishman, Los Angeles, Cal., for plaintiffs-appellees.
 Frank Rosenfeld, Washington, D.C., for defendants-appellants.
 Appeal from the United States District Court for the Central District of California.
 Before SNEED, FARRIS and NOONAN, Circuit Judges.
 FARRIS, Circuit Judge:
 
 INTRODUCTION
 
 1
 The Government defendants--the Department of Education, the Federal Communications Commission, the Department of Health and Human Services, and the Attorney General--appeal an award of $484,901.50 in attorney's fees to plaintiffs' counsel under provisions of the Rehabilitation Act and the Equal Access to Justice Act. We agree with the district court that the plaintiffs "prevailed" for the purposes of attorney's fees, but the award must be reduced to reflect the limited success that plaintiffs achieved in this litigation.BACKGROUND
 
 
 2
 Section 504 of the Rehabilitation Act requires that programs receiving federal funds not exclude any "otherwise qualified handicapped individual." 29 U.S.C. Sec. 794. In March 1978, Abraham Gottfried, attorney for plaintiffs, filed an administrative complaint with HEW, alleging that public television station KCET in Los Angeles was violating Section 504 by making only a small number of its programs accessible to hearing impaired viewers. HEW replied that it could not address the complaint until its policy on applying Section 504 to public broadcasting could be clarified.
 
 
 3
 In December 1978, after further complaints brought no action from HEW, Gottfried filed a class action suit on behalf of two deaf persons and the Greater Los Angeles Council on Deafness,[1] alleging that KCET had violated Section 504 by not providing open captions--subtitles visible to all viewers--for its programs. The suit asked that the FCC be required to promulgate and enforce regulations to implement Section 504 in public broadcasting and that HEW deny federal funds to stations or broadcasting groups not complying with Section 504.
 
 
 4
 In October 1979, HEW adopted the policy that Section 504 applied to public broadcasting, but what that policy would require was not established. HEW asked the trial court to remand the case to the agency for administrative rulemaking. The court gave HEW until November 17, 1980, to establish these compliance standards. In May 1980, however, the new Department of Education took over from HEW the responsibility for implementing Section 504. In 1981, the Department of Education published its intent to promulgate regulations applying Section 504 to public broadcasting, but asked for and received several continuances from the trial court.
 
 
 5
 In August 1981, the Department of Education advised the court that it had decided not to adopt regulations about Section 504 after all. Instead, it would deal with the problem through adjudication. In November 1981, the trial court entered judgment against the Government. The trial court awarded plaintiffs attorneys's fees of $432,285, plus costs of $3,714, for a total of $435,999.
 
 
 6
 In February 1982, the Department of Education adjudicated Gottfried's administrative complaint filed in 1978. It concluded that Section 504 required KCET to transmit with closed captions any programs it received from the Department with closed captions.
 
 
 7
 We reversed on the merits, see Greater Los Angeles Council on Deafness v. Community Television of So. California, 719 F.2d 1017 (9th Cir.1983), cert. denied, 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984), and remanded the issue of attorney's fees. The trial court ruled that the Government had litigated in bad faith and that the plaintiffs had "prevailed," even though judgment had been entered against them. The court awarded plaintiffs $435,999, the 1982 award of fees and costs, plus $48,902.50 for services rendered from 1982 to 1985, for a total award of $484,901.50. This appeal followed.[2]
 
 DISCUSSION
 I. "PREVAILING" IN THE LITIGATION
 
 8
 Defendants argue that the district court erred in ruling that plaintiffs were a "prevailing" party for the purpose of receiving attorney's fees under the Rehabilitation Act. When, as here, a plaintiff does not win a final judgment on the merits, a two-part test determines whether that plaintiff nonetheless "prevailed" for the purpose of receiving attorney's fees. See California Ass'n of the Physically Handicapped v. FCC, 721 F.2d 667, 671 (9th Cir.1983), cert. denied, 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984). First, in a factual inquiry, "the District Court must determine what the lawsuit sought to accomplish and then determine whether it was accomplished by means of the suit." Id. (citing Fitzharris v. Wolff, 702 F.2d 836, 838 (9th Cir.1983)). Plaintiffs need only have received some of the benefits they sought in the suit. See Lummi Indian Tribe v. Oltman, 720 F.2d 1124, 1125 (9th Cir.1983). There must, however, be "some sort of clear, causal relationship between the litigation brought and the practical outcome realized." American Constitutional Party v. Munro, 650 F.2d 184, 188 (9th Cir.1981) (emphasis in original). We review for clear error the district court's factual finding of such a causal relationship. Clark v. City of Los Angeles, 803 F.2d 987 (9th Cir.1986). Second, in a legal inquiry, the court must determine that the benefit achieved was required by law and was not a gratuitous act of the defendant. California Ass'n v. FCC, 721 F.2d at 671-72. Such an issue of law we review de novo. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 9
 The record shows that plaintiffs' lawsuit against the Government defendants had three main goals: (1) forcing HEW (later the Department of Education) to promulgate regulations that would enforce Section 504 by requiring public broadcasters to use "captions" (open captions) for all programs, (2) forcing the FCC to require its licensees to follow such regulations requiring open captions, and (3) preventing HEW from granting funds to broadcasters not complying with section 504. The plaintiffs clearly won on all three issues at trial, but just as clearly lost on all three issues on appeal.
 
 
 10
 On remand, however, the district court ruled that plaintiffs had achieved two more limited goals of their litigation. One goal was "establishing that broadcasters have a duty to comply with Sec. 504 of the Rehabilitation Act." HEW had not decided, at the time Gottfried filed his administrative complaint with HEW in 1978, whether Section 504 applied to public broadcasters receiving federal funds. Defendants argue that plaintiffs achieved this goal in October 1979, when HEW stated formally that Section 504 applied to public broadcasters receiving federal funds, and that they should receive no fees for pursuing the litigation past this point.
 
 
 11
 We understand but reject the Government's argument. HEW's 1979 policy statement did not clarify what specific obligations Section 504 placed on broadcasters. HEW regulations enforcing Section 504 had been in place since 1977. See 45 C.F.R. Part 84. But how those regulations were to be applied to public television was not clear. As the district court found, one of the plaintiffs' goals in the litigation had been an injunction requiring HEW "to establish the parameters of public television's obligation to the hearing impaired." There was no clear error in the district court's conclusion that this goal was achieved when the Department of Education adjudicated Gottfried's administrative complaint in 1982. The Department's decision required KCET, a public television station, to transmit with closed captions any programs received from the Department with closed captions. The Department's decision was not a gratuitous act, but was based on law, therefore satisfying the second test of California Ass'n v. FCC, 721 F.2d at 671-72. Although plaintiffs achieved far less than the universal open captioning that they had sought, the Department's clarification of policy was a practical benefit achieved through the litigation.
 
 
 12
 The district court found that a second goal achieved "[a]s a result of the litigation" was that "the federal government established a policy requiring public television stations to comply with Sec. 504 and its implementing regulations." (Emphasis in original.) This "second" goal essentially duplicates the first one, referring again to the Department of Education's 1982 adjudication of Gottfried's complaint. The "implementing regulations" are the 1977 HEW regulations enforcing Section 504. As we indicated above, the Department interpreted the regulations to require broadcasters to transmit with closed captions those programs received from the Department with closed captions. Plaintiffs had sought to force HEW (and later the Department of Education) to promulgate new regulations, but on this issue they lost completely. No new "implementing regulations" were promulgated, and we held that enforcing Section 504 through adjudication rather than regulations was within the discretion of the Department. GLACD v. Community Television, 719 F.2d at 1022. The 1977 regulation that was the basis for the Department's 1982 adjudication had of course been in place before the litigation began. This is not an accomplishment different or separate from the first one, so plaintiffs cannot be said to have achieved more than the one limited goal. This achievement is sufficient, however, for them to be a "prevailing party" under the Rehabilitation Act.
 
 II. THE "LODESTAR" AMOUNTS
 
 13
 The starting point for determining an award of attorney's fees is the so-called "lodestar" amount, the hours "reasonably expended" on the litigation times a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). We review the amount of an attorney's fee award for abuse of discretion. Clark v. City of Los Angeles, 803 F.2d at 990.
 
 
 14
 The district court did not abuse its discretion in computing the "lodestar" amounts. In 1982, the court determined that plaintiffs' attorneys had spent 1,646.8 hours on legal work from 1978-82. This figure was less than the 2,825.5 hours claimed by plaintiffs' attorneys, but 10% more than hours that the Government claims plaintiffs' attorneys had worked on the case. The court reasonably disallowed time spent on publicity, lobbying, and unrelated claims, then used the 10% upward adjustment to account for time worked but not written down by the attorneys. The "lodestar" figure was computed by multiplying these hours times a rate of $175 per hour for attorney Gottfried's time. The court found that he was a skillful, experienced attorney and that this rate was in line with similarly skilled attorneys handling civil rights cases in southern California. The abilities of an attorney appearing before the district court and the prevailing local rates are factual matters best left to the district court. We find no abuse of discretion in the district court's computation of a lodestar amount of $288,190 for fees from 1978 through 1982.
 
 
 15
 The court's computation of fees for work done from 1982 through 1985 by attorneys Gottfried and Fleishman also shows no abuse of discretion. The court reasonably determined that Gottfried worked 47 hours at a rate of $200 per hour and that Fleishman worked 171.75 hours at $230 per hour. This lodestar amount is $48,902.50.
 
 III. THE MULTIPLIER
 
 16
 In computing the award for work done from 1978-82, the district court used a "multiplier" of 1.5 to enhance the lodestar amount. The multiplier was justified, the court said in its 1985 order, (1) because of the contingent nature of the case, and (2) because of the delay in payment of fees from November 1978 until February 12, 1982, when the award was first made. In its 1982 order, the court justified the 1.5 multiplier differently, mentioning other factors in addition to contingency and delay in payment: the novelty and difficulty of the issues, the skill of counsel, the sometimes severe time limitations, and the "massive" results obtained. Clearly the results obtained are no longer massive. Moreover, the novelty and difficulty of issues are inappropriate factors to use in enhancing a fee award, because they are already accounted for in the rate used to compute the lodestar amount. See Blum v. Stenson, 465 U.S. 886, 898-99, 104 S.Ct. 1541, 1548-49, 79 L.Ed.2d 891 (1984). The Supreme Court has also prohibited the use of a multiplier to enhance fee awards because of delay in payment. Library of Congress v. Shaw, --- U.S. ----, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). Contingency may in some cases justify a multiplier, see Clark v. City of Los Angeles, 803 F.2d at 991,[3] but here there was little actual contingency. In October 1979, HEW agreed with plaintiffs that Section 504 applied to public broadcasters receiving federal funds. What obligations this policy would impose remained in dispute, of course, but partial success was assured at this early stage in the litigation. As a matter of law, we eliminate the multiplier. This leaves an unadjusted lodestar amount of $288,190 for work done from 1978-82.
 
 
 17
 The court used no multiplier to enhance the lodestar amount of $48,902.50 for work done from 1982-85. The total lodestar amount for work done from 1978-85 is therefore $337,092.50.
 
 
 18
 IV. RELATION OF FEE AWARD TO DEGREE OF SUCCESS
 
 
 19
 As we have held, the district court did not err in finding that the plaintiffs "prevailed" in this litigation. Nor were the rates and hours excessive, and we have eliminated the multiplier. That does not end our review of the court's fee award, however. We must also determine whether the amount of fees awarded was reasonably related to the limited success plaintiffs obtained. See Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Hensley held that courts must "consider the relationship between the extent of [a plaintiff's] success and the amount of the fee award." Id. at 438, 103 S.Ct. at 1942. Where, as here, "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Id. at 436, 103 S.Ct. at 1941. Of course, plaintiffs need not prevail on every claim to receive a full fee. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." Id. at 435, 103 S.Ct. at 1940.
 
 
 20
 The district court failed to weigh adequately this teaching of Hensley in making its second fee award to plaintiffs. The result obtained by plaintiffs was much less than they sought. Instead of the "massive relief" they achieved at trial, they were left after the appeal with none of the affirmative remedies they had won. Their success was significant, but very limited. We hold that it was patently excessive for the district court to reinstate after the appeal the same full fee award it made after trial. As a matter of law, the award must be reduced to match the limited extent of plaintiffs' success. Because the factual record is complete, we may make this reduction ourselves rather than remand again to the district court.
 
 
 21
 The Supreme Court offers two different approaches for setting reasonable fees in cases where a plaintiff's success is limited. Where a suit includes separable legal claims, fees may be awarded only for work on claims that were successful. To do this, a "district court may attempt to identify specific hours that should be eliminated." Hensley, 461 U.S. at 436, 103 S.Ct. at 1941. The district court correctly ruled that this approach was inappropriate here. Plaintiffs' claims were difficult to separate because they "involved a common core of facts based on related legal theories." But the district court erred by not exercising its discretion to use the alternative approach described in Hensley: "simply reduce the award to account for the limited success." Id. at 436-37, 103 S.Ct. at 1941.
 
 
 22
 To measure the extent of plaintiffs' success, we do not use a mathematical ratio of winning claims to losing claims, an approach criticized in Hensley. See 461 U.S. at 435 n. 11, 103 S.Ct. at 1940 n. 11. Instead, we compare "the significance of the overall relief obtained" to all the claims and remedies plaintiffs pursued in the litigation. Id. at 435, 103 S.Ct. at 1940. They filed suit against several government defendants, as well as private defendants. The private defendants were dismissed after the trial. Plaintiffs ultimately succeeded only on part of their claim against the Department of Education. The remedy achieved was also considerably less than the open captioning that plaintiffs sought. We hold that plaintiffs' limited success entitles them to 40% of the total lodestar amount of $337,092.50 or $134,837, plus the $3,714 in costs awarded in 1982, for a total award of $138,551.
 
 V. LITIGATING IN BAD FAITH
 
 23
 The district court's alternative ground for awarding full attorney's fees is that the Government litigated in bad faith. We review the court's finding of bad faith for clear error. In re Itel Securities Litigation, 791 F.2d 672, 674 (9th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 880, 93 L.Ed.2d 834 (1987). The court ruled that the Government's bad faith was evident in the oft-repeated promise by HEW and the Department of Education to promulgate rules enforcing Section 504 on recipients of federal funds for public broadcasting. In 1981, the Department of Education changed its policy and announced that it would enforce Section 504 by adjudication rather than rulemaking. Because the trial court granted several stays on the basis of the promised rulemaking, it believed that the Government was deliberately delaying the litigation.
 
 
 24
 Nothing in the record supports a finding of bad faith. We rejected plaintiffs' similar argument on appeal. Plaintiffs argued that the Department of Education should be "estopped from abandoning its rulemaking efforts since the litigation had been delayed on the Government's representation that regulations were being prepared." GLACD v. Community Television, 719 F.2d at 1022. We rejected this argument because "the Government preserved its claim that it need not issue regulations at all stages of the proceedings below." Id. We also held that it was within the discretion of the agency to choose either rulemaking or adjudication to enforce Section 504. Delay in making that choice may not have been efficient or helpful, but it hardly rises to the level of bad faith. Moreover, we take judicial notice that the period covered by this litigation included both the transition from one presidential administration to another and the creation of a new Department of Education, which took over from HEW responsibility for enforcing Section 504. The district court clearly erred in finding bad faith here. A full fee award cannot be affirmed on this alternative ground.
 
 VI. FEES ON APPEAL
 
 25
 Plaintiffs request fees for this appeal. Even though we have reduced the fee award they received from the district court, plaintiffs are entitled to fees on this appeal because they were a "prevailing party" in the underlying litigation. Cf. Jensen v. City of San Jose, 806 F.2d 899, 900 (9th Cir.1986). Plaintiffs' success in this appeal is partial, but the reduction analysis of Hensley is inappropriate where, as here, defending the fee award involves a single, indivisible claim. See Hensley, 461 U.S. at 435, 103 S.Ct. at 1940. Plaintiffs are entitled to full fees for time reasonably spent on this appeal. They will submit an itemized proposal of rates and hours worked within 21 days of the filing of this opinion. We will then fix the amount of fees by separate order.
 
 
 26
 AFFIRMED IN PART, REVERSED IN PART.
 
 
 
 [1]
 The Council was later denied standing
 
 
 [2]
 The plaintiffs filed a cross-appeal, but withdrew it in light of Library of Congress v. Shaw, --- U.S. ----, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986)
 
 
 [3]
 This issue is now squarely before the Supreme Court in Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, --- U.S. ----, 106 S.Ct. 3331, 92 L.Ed.2d 737 (1986) (ordering reargument on the propriety of a multiplier for the contingent nature of matter)