**COMMON CAUSE, Southern Christian Leadership Conference of Greater Los Angeles, Southwest Voter Registration Education Project, Chicano Federation of San Diego County, American Federation of Labor and Congress** of Industrial Organizations, Bryan Cahn, Miguel Contreras, Laura HO, Reverend Norman Johnson, Joanne McKray, Trisha Murakawa, Thomas Rankin, and BOB Richards, Plaintiffs,

v.

**Bill JONES, in his official capacity as California Secretary of State, Defendant.**

No. CV–01–3470 SVW.

United States District Court, C.D. California.

Nov. 7, 2002.

Deborah Pearlstein, Munger, Tolles & Olson, LLP, San Francisco, CA, Bradley S. Phillips, Stephen M. Kristovich, Munger, Tolles & Olson, LLP, Los Angeles, CA, Mark D. Rosenbaum, Daniel P. Tokaji, ACLU Foundation of Southern California, Los Angeles, CA, Stephen P. Berzon, Jonathan Weissglass, Altshuler, Berzon, Nussbaum, Rubin & Demain, San Francisco, CA, John C. Ulin, Heller, Ehrman, White & McAuliffe, Los Angeles, CA, Alan L. Schlosser, ACLU Foundation of Northern California, San Francisco, CA, Jordan C. Budd, ACLU Foundation of San Diego and Imperial Counties, San Diego, CA, Evan Caminker, Ann Arbor, MI, Jonathan P. Hiatt, Laurence E. Gold, AFL–CIO, Washington, DC, for Plaintiffs.

Bill Lockyer, Andrea Lynn Hoch, Louis R. Mauro, Kenneth R. Williams, Timothy M. Muscat, Douglas J. Woods, Office of the Attorney General of the State of California, Sacramento, CA, for Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES

WILSON, District Judge.

## I. INTRODUCTION

On February 19, 2002, this Court issued an Order finding that it was feasible for the nine California counties currently using the pre-scored punch card voting systems to convert to "other certified voting equipment" by March 2004. That Order resolved the only triable issue remaining in the case. On April 26, 2002, the Court denied Defendant's Motion for Reconsideration of that Order. On May 9, 2002, the Court approved the consent decree lodged by the parties according to the terms of its February 19 Order, and entered final judgment in this matter.

Now before the Court is Plaintiffs' Motion for Attorneys' Fees and Expenses, brought pursuant to 42 U.S.C. § 1988 and Fed.R.Civ.P. Rule 54. For the reasons set forth below, Plaintiffs' Motion is GRANTED.

## II. DISCUSSION

Section 1988 authorizes the district court "in its discretion" to "allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. A reasonable fee initially is determined by calculating the "lodestar" figure: the number of hours reasonably expended multiplied by a reasonable hourly rate. *City of Burlington v. Dague,* 505 U.S. 557, 559, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir. 1992). There is a strong presumption that the lodestar represents a reasonable fee. *Dague,* 505 U.S. at 562, 112 S.Ct. 2638; *Gates,* 987 F.2d at 1397.

Initially, "[t]he fee applicant bears the burden of documenting the appropriate hours expended in litigation and must submit evidence in support of those hours worked." *Gates,* 987 F.2d at 1397 (citing *Hensley,* 461 U.S. at 433, 437, 103 S.Ct. 1933). Plaintiffs request 1) 2,629.6 total attorney hours with rates ranging

from $270 to $455 per hour, for a lodestar figure of $878,267.50, 2) 716.2 hours of staff time at rates ranging from $105 to $165 per hour, totaling $93,311.00, and 3) $91,508.79 in out-of-pocket expenses. Plaintiffs support these requests with detailed documentation, declarations and expert testimony, thereby satisfying their initial burden.

█ "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in submitted affidavits." *Gates*, 987 F.2d at 1397 (citing *Blum v. Stenson*, 465 U.S. 886, 892 n. 5, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Toussaint v. McCarthy*, 826 F.2d 901, 904 (9th Cir.1987)). It is not at all clear that Defendant has satisfied his burden in this respect.[1]

█ Nonetheless, this Court may not uncritically accept a fee request. *See Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir.1984). Rather, the Court is obligated to "provide a concise but clear explanation of its reasons for" an attor-neys' fees award. *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933.

### 1. *Reasonableness of Hours Expended*

#### a. *Complexity and Billing Judgment*

█ This case required the development of novel and complex legal theories and necessitated that they be litigated in a tightly compressed time frame. Indeed, the implications of delay were manifest following the 2000 presidential election. Notwithstanding its urgency the case necessitated extensive factual inquiries, depositions in several states, and sophisticated statistical analyses by numerous experts. As such, it is reasonable that a significant number of attorneys and staff were employed in the action's pursuit.

█ However, such considerations do not excuse Plaintiffs from their obligation to exercise "billing judgment," i.e., to exclude from their fee request "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933; *see Davis v. City of San Francisco*, 976 F.2d 1536, 1544–45 (9th Cir. 1992). Plaintiffs appear to have done so.

---

1. The only "evidence" submitted regarding the unreasonableness of Plaintiffs' request is the Declaration of Defendant's purported fees "expert," Richard A. Hall. (Also submitted was a Declaration pertaining to Defendant's efforts at election reform.) First, it is not clear that Hall is qualified as an expert for this purpose. His only relevant qualifications appear to consist of four years as an associate with two area law firms—ending in 1994— and current role as founder and president of a firm involved in developing legal billing software. As such, the Court is unclear whether Hall possesses any "knowledge, skill, experience, training or education" that would assist the Court in understanding the evidence submitted by Plaintiffs. Federal Rule of Evidence 702; *see LuMetta v. United States Robotics, Inc.*, 824 F.2d 768, 771 (9th Cir.1987). He does not appear to have any knowledge regarding the billing practices of firms involved in complex constitutional or civil rights litigation, nor does the Declaration establish how his involvement with billing software qualifies him to interpret the accuracy or reasonableness of the hours billed by Plaintiffs in this case. Additionally, Mr. Hall's analysis with regard to reasonable billing rates appears to be inapposite. His opinion that Plaintiffs' rates are unreasonable is based on a survey of attorneys practicing insurance defense, insurance coverage, patent law, and SEC litigation. It is unclear how the rates charged in these fields can be analogized to billing in the context of complex constitutional and civil rights litigation. Moreover, the relevant inquiry in the Ninth Circuit is as to the rate "that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *See Davis v. City of San Francisco, infra*. It does not appear that Hall's survey is relevant to this inquiry.

For instance, Plaintiffs state that they eliminated from their request 400 hours of summer associate research, 100 hours charged by other staff members and, most critically, 200 hours of. attorney time thought to reflect any duplication of effort. Pls.' Mot. for Attys' Fees and Expenses at 14. This apparently includes billing only for the most senior attorney or counsel on any team conference call or court appearance, despite the participation of other attorneys. *Id.* Plaintiffs also have waived time for certain attorneys outside the Plaintiffs' law firms and for certain in-house counsel attorneys at Plaintiffs AFL–CIO and Common Cause. *Id.*

Based on these facts, Plaintiffs' detailed fee request, the declarations and other evidence submitted by Plaintiffs, and Defendant's failure to controvert adequately the reasonableness of the request, the Court is satisfied that the number of hours billed is reasonable.

b. *Partial Success Doctrine*

■■■■■ In assessing the reasonableness of the hours included in a fee request, the Court also may consider whether the prevailing party achieved only partial or limited success. *Hensley*, 461 U.S. at 434–36, 103 S.Ct. 1933; *Corder v. Gates*, 947 F.2d 374, 378 (9th Cir.1991) (typically, partial success is considered in determining reasonableness of hours expended, not in a subsequent adjustment to the lodestar figure).

Here, there is no dispute that Plaintiffs were the prevailing party. *See* Def.'s Opp. to Pls.' Mot. for Attys' Fees and Expenses ("Def.'s Opp.") at 21. Instead, Defendant argues that because Defendant independently pursued an election reform agenda, and because Plaintiffs were not awarded all the relief sought in their initial Complaint (specifically, any relief related to manual recounts and a declaration that certification of certain punch-card systems

was unconstitutional), their relief was less-than-total. *Id.* at 20–21.

■■■ However, "[i]t is clear that a litigant need not prevail on every claim in order to receive a full fee." *Gates v. Deukmejian*, 987 F.2d 1392, 1404 (9th Cir. 1992) (citing *Greater Los Angeles Council on Deafness v. Community Television*, 813 F.2d 217, 222 (9th Cir.1987)). Rather, "the result is what matters." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933.

When Plaintiffs initially filed this action, Defendant had not announced an intention to decertify the challenged balloting systems. Indeed, Defendant contested the legal merits of Plaintiffs' claims, arguing that the challenged systems were accurate, legal and constitutional. *See* Defendant's Answer at 6; Defendant's Motion for Judgment on the Pleadings. Only after this Court denied Defendant's Motion for Judgment on the Pleadings did he announce an intention to decertify punch-card balloting and enter into a stipulation with Plaintiffs reflecting that decision. It is irrelevant whether the Court's Order precipitated Defendant's decision. His vigorous opposition to Plaintiffs' claims prior to his decision made reasonable Plaintiffs' prosecution of this action. Further, Plaintiffs' success hardly can be described as partial simply because Defendant entered into a stipulation effectively mooting the constitutional issues and relief sought regarding manual recounts of punch-card ballots. Finally, the 2004 decertification date included in the consent decree was achieved only because Plaintiffs continued to press the action and persuaded this Court that Defendant's later deadline was inadequate. *See* Order of February 19, 2002.

By pursuing this case to its ultimate conclusion, Plaintiffs achieved their primary goal: decertification of pre-scored punch card machines in as expedited a

manner as is practicable. Thus, no adjustment to the reasonable number of hours expended in this lawsuit is appropriate on the basis of partial or limited success.

### 2. *Reasonableness of the Billing Rate*

 The second prong of the lodestar calculation relates to the reasonableness of the billing rate. " '[R]easonable rates' under Section 1988 are to be calculated according to the prevailing market rates in the relevant legal community." *Stenson,* 465 U.S. at 895 n. 11, 104 S.Ct. 1541. The Ninth Circuit has further clarified that "such rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Davis v. City of San Francisco,* 976 F.2d 1536, 1545 (9th Cir. 1992).

Importantly, Defendant does not contest that the asserted billing rates are at or below those charged by Plaintiffs' attorneys and other attorneys of comparable skill and reputation. *See* Def.'s Opp. at 19 ("Secretary Jones is not disputing that the largest and most prestigious law firms in Los Angeles charge certain clients hourly rates as high as $455.00. Secretary Jones also does not challenge the claims of Douglas Mirell, plaintiffs' fee expert, that prestigious litigation firms such a[sic] Loeb & Loeb LLP can charge their commercial clients $500.00 an hour.") Rather, Defendant argues that the rates of some of Plaintiffs' attorneys are inappropriate to litigation of this type—in essence, that " '[A] Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn.' " *Id.* (quoting *Ursic v. Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir.1983)).

This case hardly constituted a "farmer's barn." Quite the contrary, it affected at least 8.4 million registered California voters, and presented issues touching on fundamental—perhaps the most fundamental—democratic interests. *See Bush v. Gore,* 531 U.S. 98, 105, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000) (" 'the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise' ") (quoting *Reynolds v. Sims,* 377 U.S. 533, 555, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964)). Indeed, statistical evidence advanced in this case suggested that the challenged punch card machines suffered from an error rate nearly double that of other polling technologies, and risked continuing effectively to disenfranchise thousands of voters as a result. More importantly, the legal issues were complex, multivariate and often novel, including constitutional and statutory challenges to an intricate election scheme, and, later, the practicability of a rapid overhaul of the state's electoral machinery. They also demanded a wide range of sophisticated statistical and technical competencies, and the coordination of complex, multifaceted litigation.

In this context, it was reasonable for Plaintiffs to seek out the most competent and talented attorneys available, and for those attorneys to take central roles in litigating this case. Thus, Plaintiffs' request for billing rates that are commensurate with the rates charged by other attorneys of comparable skill and reputation are reasonable in light of the complexity, urgency and novelty of this case.

### III. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Attorneys' Fees and Expenses is GRANTED.

IT IS HEREBY ORDERED that Defendant shall pay to Plaintiffs attorneys'

fees and expenses in the sum of $1,063,087.29.

IT IS SO ORDERED.