**David CAPLAN, Plaintiff,**

**v.**

**CNA FINANCIAL CORPORATION; CNA Short Term Disability Plan; CNA Long Term Disability Plan; and Hartford Life Group Insurance Company, Defendants.**

No. C 06–5865 CW.

United States District Court, N.D. California.

Aug. 20, 2008.

Cassie Springer–Sullivan, Margaret Elizabeth Hasselman, Daniel Mark Feinberg, Lewis, Feinberg, Lee, Renaker & Jackson, P.C., Oakland, CA, for Plaintiff.

Dennis Graham Rolstad, Erin A. Cornell, Michelle Yumi McIsaac, Sedgwick Detert Moran & Arnold LLP, Krista L. Mitzel, Seyfarth Shaw LLP, San Francisco, CA, for Defendants.

## ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND DENYING DEFENDANTS' CROSS–MOTION FOR ATTORNEYS' FEES

CLAUDIA WILKEN, District Judge.

Plaintiff David Caplan moves for an award of attorneys' fees and costs incurred in prosecuting this action and for an award of pre-judgment interest. Defendants Hartford Life Group Insurance Company (Hartford) and CNA Long–Term Disability Plan (the Plan)[1] oppose this motion and cross-move to recover attorneys' fees incurred in defending against Plaintiff's claim for breach of fiduciary duty. The matter was taken under submission on the papers. Having considered all of the papers submitted by the parties, the Court grants Plaintiff's motion in part and denies Defendants' motion.

## BACKGROUND

Plaintiff brought this lawsuit seeking both short-term disability (STD) and long-term disability (LTD) benefits under plans offered by his former employer. He subsequently settled his claim for STD benefits. On April 4, 2008, 544 F.Supp.2d 984, the Court granted in part Plaintiff's motion for judgment, ordering Hartford, the Plan's administrator, to provide him with LTD benefits for a period of one year under the "own occupation standard." The Court also remanded Plaintiff's claim to Hartford for a determination of whether

he is eligible for additional benefits under the "any occupation" standard. The Court denied Plaintiff's motion for judgment on his claim for breach of fiduciary duty. In connection with that claim, he had sought an injunction removing Hartford as the Plan's fiduciary and prohibiting Hartford from using University Disability Consortium (UDC) as a medical record reviewer.

Plaintiff now seeks $184,283 in attorneys' fees and $4,059.12 in costs and expenses.[2] He also seeks pre-judgment interest on the benefits that Hartford wrongfully withheld from him.

## DISCUSSION

### I. The Parties' Requests for Attorneys' Fees

#### A. Plaintiff's Motion

■ ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Ninth Circuit has held, "This section should be read broadly to mean that a plan participant or beneficiary, if he prevails in his suit under § 1132 to enforce his rights under his plan, should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir.1984) (internal quotation marks omitted). This is in line with ERISA's broad remedial purpose "to protect employee rights and to secure effective access to federal courts." *Id.*

■ In determining whether special circumstances exist warranting the denial of

---

**1.** The remaining defendants are no longer parties to this action. All references to "Defendants" in this order refer to Hartford and the Plan only.

**2.** In opposing Plaintiff's motion, Defendants objected to a charge for $49.50 for e-filing a pleading. Plaintiff subsequently subtracted this charge from the total amount of fees sought.

attorneys' fees, a court may consider: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980). No one of these *Hummell* factors is decisive, and some may not be pertinent in a given case. *Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir.1984). Rather, they reflect a balancing, and not all must weigh in favor of a fee award. *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir.1999).

Upon consideration of the *Hummell* factors in this case, the Court finds no special circumstances to warrant denying Plaintiff's motion. While the Court has not specifically found that Defendants acted in bad faith, bad faith is not required for an award of attorneys' fees. *Smith*, 746 F.2d at 590. And from a legal perspective, Defendants are "culpable" in that they were found to owe Plaintiff a legal duty that they were not fulfilling. In addition, the Court found that Hartford's relationship with UDC was troubling and cast doubt on the objectivity of Hartford's claims administration.

Defendants do not dispute that they have the ability to pay the fees sought. In addition, even though Plaintiff's claim for an injunction removing Defendant Hartford as the Plan's administrator was unsuccessful, he nonetheless sought through this lawsuit to benefit all participants in the Plan. Furthermore, an award of attorneys' fees could serve to deter other plan administrators from denying meritorious disability claims. This could indirectly benefit other individuals.

As for the relative merits of the parties' positions, Plaintiff succeeded on his claim for benefits. While it is true that his claim for breach of fiduciary duty was denied, this does not constitute a basis for denying his motion. *Smith* held that attorneys' fees should not necessarily be reduced "simply because the plaintiff failed to prevail on every contention raised in the lawsuit.... The result is what matters." 746 F.2d at 591 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Even less does failure to prevail on one claim justify the outright denial of fees. Accordingly, the fifth *Hummell* factor also supports awarding Plaintiff attorneys' fees.

**B. Defendants' Motion**

Defendants argue that, because Plaintiff did not succeed on his claim for breach of fiduciary duty, they should be awarded attorneys' fees incurred in defending against this claim. Under these circumstances, where Plaintiff has obtained substantial relief, such an award would be unprecedented.

It is true that ERISA does not "favor one side or the other" in connection with fee awards, *Estate of Shockley v. Alyeska Pipeline Serv. Co.*, 130 F.3d 403, 408 (9th Cir.1997), and Defendants cite several cases in which courts have awarded fees to a prevailing defendant. But in each of those cases, the plaintiff failed to prevail on *any* of his or her claims, and in most of them, the plaintiff had also engaged in untoward conduct. *See, e.g., Moreno v. S.J. Weaver Contracting, Inc.*, 2006 WL 2827908, at *1 (N.D.Cal.) (finding that there was "no factual basis" for suing the defendant in his individual capacity); *Contilli v. Local 705, Int'l Bhd. of Teamsters Pension Fund*, 2007 WL 2973835, at *3

(N.D.Ill.) (finding that the plaintiff's claims had "no solid basis" and were "not substantially justified"); *Redman v. TXU Long Term Disability Income Plan,* 2006 WL 1491892, at *1 (E.D.Tex.) (finding that the plaintiff had "failed to fulfill his responsibilities as a plan participant" and had acted in an "uncooperative manner").

Defendant has not cited any ERISA case in which a defendant was awarded fees when, as here, the plaintiff prevailed on some, though not all, of his or her claims. Nor has Plaintiff engaged in conduct similar to that which was found troubling in the cases cited above. Plaintiff's claim for breach of fiduciary duty, though unsuccessful, was not baseless.

For these reasons, the Court will not award Defendants attorneys' fees.

## II. Amount of Recoverable Fees

■ In the Ninth Circuit, reasonable attorneys' fees are determined by first calculating the "lodestar." *Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th Cir.1987). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael,* 96 F.3d 359, 363 (9th Cir.1996). There is a strong presumption that the lodestar figure represents a reasonable fee. *Jordan,* 815 F.2d at 1262. However, the court may adjust the award from the lodestar figure upon consideration of additional factors that may bear upon reasonableness. *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975).

### A. Hourly Rate

■ Determining a reasonable hourly rate is a critical inquiry. *Jordan,* 815 F.2d at 1262 (citing *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). In establishing the reasonable hourly rate, the court may take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained. *See Cabrales v. County of Los Angeles,* 864 F.2d 1454, 1464 (9th Cir.1988). These factors are subsumed in the initial lodestar calculation, and should not serve as independent bases for adjusting fee awards. *Morales,* 96 F.3d at 363–64. The reasonable rate inquiry should also be informed by reference to the prevailing market rates in the forum district. *Gates v. Deukmejian,* 987 F.2d 1392, 1405 (9th Cir. 1992).

■ Plaintiff seeks an hourly rate of $575 for Daniel Feinberg, a shareholder in the law firm handling Plaintiff's case, $350 for Cassie Springer–Sullivan, a sixth-year associate, $330 for Margaret Hasselman, a fourth-year associate, and $200 for law student clerks. Plaintiff has submitted declarations establishing the qualifications and experience of his attorneys. These show that Mr. Feinberg has twenty years of experience in employee benefits cases and is well respected in the field. He frequently speaks and writes about ERISA issues. Mary Ellen Signorille, a senior staff attorney for the American Association of Retired Persons, states in a declaration that, based on her own extensive knowledge of ERISA practice, cases such as this one are complex and are not attractive to many attorneys. She also states that Mr. Feinberg's hourly fee is within the range of reasonableness for attorneys with equal expertise, standing and experience in the San Francisco Bay Area. Signorille Dec. ¶ 15; *accord* Dean Dec. ¶ 15. She likewise states that the fees sought for the work of Ms. Springer–Sullivan and Ms. Hasselman are reasonable for associates with comparable experience. Signorille Dec. ¶ 15; *accord* Dean Dec. ¶ 15. In addition, a court in the Central District of

California recently approved an award of attorneys' fees to Mr. Feinberg, Ms. Springer–Sullivan and the firm's law clerks at the same rates sought here. *See Hawkins–Dean v. Metro. Life Ins. Co.,* 2007 WL 2735684, at *1 (C.D.Cal.).

Defendants argue generally that Plaintiff's counsel's rates are unreasonable, but they provide no evidence in support of this contention other than the fact that their own counsel charge less for their services than Mr. Feinberg. This is not sufficient to establish that the hourly rates are unreasonable, and the Court finds that they are.

### B. Number of Hours

■ Defendants argue that the number of hours Plaintiff's counsel spent on this case is unreasonable because it includes time spent prosecuting Plaintiff's claim for breach of fiduciary duty, which, according to Defendants, "dominated this litigation and resulted in the vast majority of the fees incurred in what otherwise would have been an expedited litigation concerning a reasonably small benefit claim." Defs.' Mot. at 1.

■ As Plaintiff points out, the Ninth Circuit has held that, in applying the ERISA attorneys' fees provision, "the *Hummell* factors should be 'liberally construed in favor of protecting participants in employee benefits plans.'" *Elliot v. Fortis Benefits Ins. Co.,* 337 F.3d 1138, 1148 (9th Cir.2003) (internal quotation marks omitted) (affirming the district court's award of fees, including fees for time spent on state law claims that were found to be preempted). Nonetheless, the amount of a fee award should reflect the plaintiff's overall level of success. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.... If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reason-ably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley v. Eckerhart,* 461 U.S. 424, 435–36, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In determining the extent of the plaintiff's success, it is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Id.* at 435 n. 11, 103 S.Ct. 1933.

■ "The Supreme Court offers two different approaches for setting reasonable fees in cases where a plaintiff's success is limited. Where a suit includes separable legal claims, fees may be awarded only for work on claims that were successful. To do this, a district court may attempt to identify specific hours that should be eliminated." *Greater L.A. Council on Deafness v. Cmty. Television of S. Cal.,* 813 F.2d 217, 222 (9th Cir.1987) (internal quotation marks omitted). However, where multiple claims are difficult to separate because they involve a "common core of facts based on related legal theories," such an approach may not be possible. *Greater L.A. Council on Deafness,* 813 F.2d at 222. Instead, the court may adopt "the alternative approach described in *Hensley*: 'simply reduce the award to account for the limited success.'" *Greater L.A. Council on Deafness,* 813 F.2d at 222 (quoting *Hensley,* 461 U.S. at 436–37, 103 S.Ct. 1933). To determine the appropriate amount of reduction, the court should not use a "mathematical ratio of winning claims to losing claims." *Id.* Instead, it should compare "the significance of the overall relief obtained to all the claims and remedies plaintiffs pursued in the litiga-

tion." *Id.* (citation and internal quotation marks omitted).

Here, the Court found that Hartford abused its discretion in denying Plaintiff's claim for LTD benefits. As a result, Defendants were ordered to provide Plaintiff with one year's worth of benefits and to evaluate his eligibility for further benefits.[3] The Court, however, denied Plaintiff's claim for breach of fiduciary duty, which sought an injunction removing Hartford as the Plan's administrator for a period of time and prohibiting Hartford from utilizing UDC as a medical record reviewer. Although failure to prevail on a particular claim or legal theory does not necessarily warrant a reduction in the fee award, the relief obtained by Plaintiff was limited in comparison to what he sought. Consequently, an award based on the total number of hours spent by Plaintiff's counsel would be excessive.

■■■ The amount of the fees charged by counsel would no doubt be lower if Plaintiff had not pursued his unsuccessful claim for breach of fiduciary duty. However, because this claim is related to his claim for benefits, it is not possible simply to exclude from the lodestar calculation hours spent litigating the unsuccessful claim. Instead, the Court finds that a modest downward adjustment of the lodestar is warranted. *See Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008) ("[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation."); *Van Gerwen v. Guarantee Mut. Life Co.,* 214 F.3d 1041, 1045 (9th Cir.2000) (noting that "the results obtained" by the plaintiff may be grounds for a downward adjustment, provided that

those results are not subsumed in the initial lodestar calculation); *Weingarten v. Optima Commc'ns Sys., Inc.,* 544 F.Supp.2d 193, 198 (S.D.N.Y.2008) (reducing fee award by ten percent from the lodestar to account for unsuccessful related claim); *Gorini v. AMP, Inc.,* 2004 WL 1354465, at *6 (M.D.Pa.) (reducing fee award by two percent from the lodestar to account for unsuccessful breach of contract claim related to successful ERISA claim). Based on the Court's familiarity with this action and the relationship between Plaintiff's claim for benefits and his claim for breach of fiduciary duty, it finds that a reduction of eight percent is appropriate.

The greater reduction of fifty percent proposed by Defendants is not warranted. Because Plaintiff's claims were closely related to each other, it would not be reasonable to conclude that Plaintiff's counsel would have spent half as many hours litigating this action if Plaintiff had pursued only his LTD claim and not his claim for breach of fiduciary duty. The facts upon which he relied in prosecuting the latter claim—specifically, information concerning Hartford's parsimonious claims history and its relationship with UDC—were also relevant to the former claim. The Court specifically discussed this information when determining the appropriate weight to give the evidence upon which Hartford relied in denying Plaintiff's claim for benefits.

Defendants also argue that the Court should account for time spent on Plaintiff's claim for STD benefits by reducing by one-third the charges for "work performed in pursuit of the litigation in general at the time plaintiff was seeking short term disability benefits, long term disability benefits, and injunctive relief," up to Septem-

---

**3.** Plaintiff did not fail to prevail on his claim for more than one year's worth of benefits, in that the Court did not find that Hartford acted within its discretion with respect to this claim. Rather, the claim was remanded to Hartford because Hartford never issued a decision on it in the first place, and thus there was nothing for the Court to review.

ber 13, 2007, when Plaintiff settled his STD claim. Defs.' Opp. to Pl.'s Mot. at 19. However, Plaintiff did not submit charges for time his counsel spent exclusively litigating and negotiating the settlement of his STD claim. As a result, over 100 hours were deducted from the total. Feinberg Dec. ¶ 13. And while other charges incurred prior to September 13, 2007, such as those for drafting the complaint and discussing litigation strategy, may have advanced Plaintiff's claim for STD benefits as well as his other claims, because the claims all involved "a common core of facts" and were "based on related legal theories," it is not possible to divide the charges on a claim-by-claim basis. *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. Nor is it necessary to reduce the fee award if the hours spent on the litigation as a whole were expended reasonably. *Id.* The Court finds that the hours devoted to this lawsuit generally, prior to September 13, 2007, were expended reasonably, and no reduction beyond the eight percent discussed above is warranted.

In sum, the Court finds that an eight percent reduction in the amount of fees sought is appropriate under the circumstances, and therefore will award Plaintiff $169,540.36.

### C. Costs and Expenses

In opposing Plaintiff's motion, Defendants noted that Plaintiff's list of costs and expenses failed to take into account that the clerk had already taxed them $535.17 in costs. They also objected to $41.38 in meal expenses sought by Plaintiff's counsel. Plaintiff has deducted the costs already taxed as well as $26.47 for an overtime meal expense that was mistakenly included in the original list. The remaining $14.91 in meal expense represents the price of a lunch that took place during an unsuccessful mediation in San Francisco. This amount is recoverable. *See In re CV*

*Therapeutics, Inc. Sec. Litig.*, 2007 WL 1033478 (N.D.Cal.).

Defendants also argue that the remainder of the costs should be reduced to account for Plaintiff's STD benefits claim and his unsuccessful claim for breach of fiduciary duty. Again, these costs cannot be divided among the claims. Defendants do not argue that they are otherwise unreasonable, and the Court therefore awards Plaintiff costs in the amount of $4,059.12.

### III. Pre-judgment Interest

■■■■■ A district court may award pre-judgment interest on past-due benefits in ERISA cases. The decision as to whether to award such interest is "a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *Landwehr v. DuPree*, 72 F.3d 726, 739 (9th Cir.1995) (quoting *Shaw v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*, 750 F.2d 1458, 1465 (9th Cir.1985)). The Court finds that the equities support an award of pre-judgment interest in this case.

The parties agree that 28 U.S.C. § 1961(a), which specifies the rate applicable to awards of post-judgment interest, also governs the interest rate in this case. This section provides that interest is calculated "at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding. [sic] the date of the judgment." However, the parties disagree as to the date that should be used as a reference for determining the Treasury yield. Plaintiff argues that the applicable rate should be that which was in effect at the time his benefits were due. Defendants argue that the rate should be that which was in effect at the time the

Court granted judgment in Plaintiff's favor.

In support of their position, Defendants note that the Ninth Circuit has held that "the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." *Grosz–Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1164 (9th Cir.2001) (quoting *Nelson v. EG & G Energy Measurements Group, Inc.*, 37 F.3d 1384, 1391 (9th Cir.1994)). However, this holding merely specifies that the weekly average 1–year constant maturity Treasury yield, as opposed to some other index, should be used to determine the appropriate interest rate. It does not address the date by reference to which the Treasury yield should be determined.

Plaintiff's position finds partial support in other Ninth Circuit precedent. In *Nelson,* the court stated:

[Defendant] EG & G argues that the pre-judgment interest rate should have been calculated at the 52–week Treasury bill rate[4] as of the time of judgment, which was 3.51 percent. This does not correspond with the approach taken in *Western Pacific Fisheries[, Inc. v. S.S. President Grant,* 730 F.2d 1280, 1289 (9th Cir.1984)]. In that case, insurance underwriters had paid out funds for which they sought reimbursement. The interest rate utilized for the pre-judgment interest was the average 52–week Treasury bill rate operative immediately prior to the date of payment by the underwriters. This makes good sense

because pre-judgment interest is intended to cover the lost investment potential of funds to which the plaintiff was entitled, from the time of entitlement to the date of judgment. It is the Treasury bill rate during this interim that is pertinent, not the Treasury bill rate at the time of judgment. The Treasury bill rate at the time of judgment has no bearing on what could have been earned prior to judgment.

The method of calculating the pre-judgment interest utilized by the district court reasonably reflected this approach. The interest due was calculated as though the plaintiffs had invested the withheld funds at the 52–week Treasury bill rate and then reinvested the proceeds annually at the new rate. This reasonably reflects the conservative investment income the plaintiffs would have been able to have earned had they received the funds on September 30, 1987.

37 F.3d at 1391–92.

■ Thus, Plaintiff is due interest equivalent to that which would have accrued if he had invested his LTD benefits at a rate equal to the weekly average 1–year constant maturity Treasury yield on the date the benefits were due to him, and then reinvested the proceeds annually at a rate equal to the weekly average 1–year constant maturity Treasury yield at the time of the reinvestment, up to the date on which Defendants satisfy the judgment.[5] This differs from Plaintiff's suggested approach in that the interest rate, which tracks the Treasury yield, will change upon each year's reinvestment. In addition,

4. At the time *Nelson* was decided, 28 U.S.C. § 1961(a) provided that the applicable interest rate was "the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week

United States Treasury bills settled immediately prior to the date of the judgment."

5. The parties are still calculating the amount of benefits Plaintiff is due, and thus this date has not yet passed.

**1254**

the interest shall be compounded annually, as specified by 28 U.S.C. § 1961(b), not monthly, as Plaintiff requests.

CONCLUSION

For the foregoing reasons, Plaintiff's motion for attorneys' fees, costs and pre-judgment interest (Docket No. 169) is GRANTED IN PART. Defendants are ordered to pay Plaintiff attorneys' fees in the amount of $169,540.36 and costs in the amount of $4,059.12. Defendants must also pay Plaintiff pre-judgment interest on his disability benefits, to be calculated as specified in this order. Defendants' motion for attorneys' fees (Docket No. 174) is DENIED.

IT IS SO ORDERED.